## COMSTOCK *v.* AMES.

March, 1867.

Fraud, by which a vendor in an executory contract for the sale of land, had acquired the legal title thereto, does not give the purchaser in such contract a right of action against him, if it does not appear that the person defrauded made any objection, upon reasonable opportunity, after full knowledge of the facts. A fraud is a cause of complaint to the person only upon whom it is committed.

The court of appeals may reverse a judgment upon the report of a referee, if it appear from the case that while some facts were expressly found, certain other facts which are essential to sustain the judgment were intentionally not found; for in such a case it is reasonably clear that a rule of law has been violated in rendering the judgment.*

An agent, employed to purchase lands at a tax sale, fraudulently purchased in his own name, and acquired the legal title, concealing the fact from his principals. He then made an executory contract to convey the land to the present plaintiff, reciting in the contract his personal knowledge that one parcel of the land was unoccupied, and stated that the title to that lot was therefore perfect; and, as to the other parcels, recited service of notice and expiration of time to redeem.

*Held,* 1. That plaintiff could not maintain an action against him or for damages for fraud, it appearing that the principals, though aware of the facts for several years, had taken no measures to avoid the title claimed by their agent.

2. That proof of the falsity of those recitals which did not purport to be made upon personal knowledge,—without showing knowledge of the falsity, on the defendant's part, or something equivalent, and plaintiff's reliance on the truth of the recitals,—would not sustain an action for fraud.

Allen Comstock sued Ahaz Hayes, in the supreme court, for damages for false and fraudulent representations in inducing plaintiff to purchase three tracts of land from him, to which he had no title. On the death of Hayes, pending the action, Samuel Ames and Elizabeth T. Hayes, his executor and executrix, were substituted as defendants.

On January 13, 1853, Ahaz Hayes entered into a contract with the plaintiff, by which, in consideration of one hundred and thirty-one dollars and seventy-six cents agreed to be paid to him, he contracted to convey to the plaintiff, by quitclaim

---

* Followed in Meyer *v.* Amidon, 45 *N. Y.* 160.

deed, lots No. 80, 99 and 100 in Macomb's purchase, Franklin county; each of about three hundred and forty-four acres.

These lots had been conveyed by Hayes, the deceased, in 1842 to W. and A. Ricketson. The taxes for 1844 remaining unpaid, these lots were advertised for sale by the comptroller in 1848, and were sold in that year, to satisfy said taxes.

The deceased had agreed with the Ricketsons that he would pay these taxes, or if the lands should be sold, that he would bid them off in the name of the Ricketsons. He attended the comptroller's sale and bid off these lots in his own name, and on August 11, 1851, received a comptroller's deed therefor. He assured the Ricketsons that he had bid off these lots in their name, and he concealed from them the fact of the bid in his own name, and of the deed thereof from the comptroller to himself, and therein perpetrated a gross fraud upon the Ricketsons. Other facts were found showing the fraudulent character of the transaction, as between the deceased and the Ricketsons, and tending also to show that the title of the deceased under the comptroller's deed was imperfect.

Upon these facts the referee found, as conclusions of law, that the title of the deceased under the comptroller's deed of August 11, 1851, was avoided by his fraud upon the Ricketsons. The referee did not find that any fraudulent representations were made by the deceased to the plaintiff, nor indeed that any representations whatever were made, except as he found that the deceased made a contract of sale in writing, in which he recited that the comptroller had conveyed these lots to him, and that the time for redeeming the same had expired before the conveyance to him by the comptroller, and in which he also recited that " one of said lots was unoccupied and the title to the same was therefore perfect, and that notice had been served upon the occupants of the others which were supposed to be resident lands."

The referee did not find that these recitals were fraudulent, nor that they were made to induce the plaintiff to purchase, nor that the plaintiff relied upon them in making the purchase. No fact was found by the referee showing that the Ricketsons had ever taken any measures to avoid the comptroller's deed of August 11, 1851, to the deceased, although more than nine

years had elapsed after the date of the deed before the date of his report; nor did his report show that the Ricketsons have ever made objection to the title acquired thereunder by the deceased, or that they were not content with the existing state of things.

It was not found that the one lot was not unoccupied; and while it was stated that notices had not been served upon the occupants of the others, it was not stated that any loss or damage had accrued from such omission to the plaintiff.

The referee, however, being of opinion that admitted fraud could not be recognized as the basis of a legal title, and that plaintiff was not bound to leave the Ricketsons to a direct action against the defendant for the fraud, held that the plaintiff was entitled to recover as damages the value of the lots, five thousand three hundred and sixty dollars.

*The supreme court,* at general term, on appeal, held, that as the referee did not find that the plaintiff was injured by the falsity of the recitals, and as .defendant had the *legal* title, defendant's fraud upon the Ricketsons could not avail in this action, at least unless the Ricketsons were made parties. That as the referee had not found any representation to be *fraudulently* untrue, but had allowed damages upon the theory that the representations were fraudulently untrue, it appeared that the case had been tried on a wrong theory, and the findings of fact did not sustain the conclusion. They accordingly ordered a new trial.

The plaintiff appealed to this court.

*Samuel Hand,* for plaintiff, appellant;—As to fraud and the statute of frauds; cited Clark *v.* Baird, 9 *N. Y.* 183 ; Haight *v.* Hayt, 19 *Id.* 464 ; Bennett *v.* Judson, 21 *Id.* 238 ; Ryan *v.* Dox, 34 *Id.* 307, 314, reversing S. C., 25 *Barb.,* relied upon by the court below; Swinburne *v.* Swinburne, 28 *N. Y.* 568 ; 2 *Story Eq.* §§ 759, 1522 ; Mestaer *v.* Gillespie, 11 *Ves.* 627, 628 ; *Fry on Sp. Per.* §§ 378, 382 ; Lees *v.* Wiethal, 1 *Tam.* 282 ; S. C., 1 *Russ. & M.* 53 ; S. C., 2 *Myl. & K.* 819 ; Cumberland Coal Co. *v.* Sherman, 30 *Barb.* 553, and cases cited ; Torrey *v.* Bank of Orleans, 9 *Paige,* 649 ; 1 *Stor. Eq.* §§ 316, 330 ; *Dun. Pal. Ag.* 37, n. 4 ; 32 *Barb.* 204 ; Murray *v.* Walker, 31 *N. Y.* 399 ; Mc-

Comstock *v.* Ames.

Burney *v.* Wellmann, 42 *Barb.* 390. As to defect of title; 1 *R. S.* 412, § 83; *L.* 1830, p. 112; Hand *v.* Ballou, 2 *Kern.* 541, and cases cited; Clermont *v.* Tasburgh, 1 *Jac. & W.* 112, 120; *Fry on Sp. Perf.* § 458; Lawrence *v.* Taylor, 5 *Hill,* 107; Peabody *v.* Fenton, 3 *Barb. Ch.* 451, 461; *Addis on Cont.* 137; Hegerman *v.* Buerly, 14 *Ves.* 288; Bennett *v.* Wade, 1 *Dickens,* 84; 23 *Barb.* 9; 22 *N. Y.* 535. The judgment should not be reversed for defect in findings of fact; Grant *v.* Morse, 22 *N. Y.* 324; Milhau *v.* Sharp, 27 *Id.* 624; Brainerd *v.* Dunning, 30 *Id.* 211; Hoyt *v.* Hoyt, 8 *Bosw.* 511; Ingraham *v.* Gilbert, 20 *Barb.* 151; Platt *v.* Thorn, 8 *Bosw.* 574; Ryan *v.* Dox, 25 *Barb.* 440. Fraud is inferred from positive representations; Jennings *v.* Carter, 2 *Wend.* 446; Booth *v.* Bunce, 33 *N. Y.* 139; Mead *v.* Bunn, 32 *Id.* 275; Bennett *v.* Judson, 21 *Id.* 238; Whitney *v.* Allaire, 1 *N. Y.* (1 *Comst.*) 305; Sharp *v.* Mayor of *N. Y.,* 40 *Barb.* 256; Ashley *v.* Marshall, 29 *N. Y.* 494.

*L. Stetson,* for defendants, respondents;—Cited Johnson *v.* Whitlock, 13 *N. Y.* (3 *Kern.*) 346; Westcott *v.* Thompson, 16 *Id.* 613; Andrews *v.* Bond, 16 *Barb.* 633; Walter *v.* Bennett, 16 *N. Y.* 250; Staats *v.* Ten Eyck, 3 *Cai.* 115; Flureau *v.* Thornhill, 2 *W. Bl.* 107, 8; Baldwin *v.* Munn, 2 *Wend.* 405–6; Peters *v.* McKeon, 4 *Den.* 549; Trull *v.* Granger, 8 *N. Y.* (4 *Seld.*) 119; 24 *Barb.* 100; Ryan *v.* Dox, 34 *N. Y.* 307; Stevenson *v.* Newnhand, 16 *Eng. L. & Eq.* 408; Jackson *v.* Henry, 10 *Johns.* 196–7; Rodgers *v.* Langham, 1 *Sid.* 134; Doe *v.* Marley, 4 *Bos. & P.* 332; Fletcher *v.* Peck, 6 *Cranch,* 133; Jackson *v.* Walsh, 14 *Johns.* 415; 5 *Id.* 48; 10 *Id.* 197; 13 *Id.* 222 and note 1; 1 *Johns. Ch.* 533; Anderson *v.* Roberts, 18 *Johns.* 516; *R. S.* Part 2, c. 1, tit. 2, § 54; Jackson *v.* Eaton, 20 *Johns.* 482 (2).

By the Court.—Hunt, J. [After stating the substance of the referee's report, as above.]—We are not at liberty to go behind the report of the referee and examine the testimony of the witnesses to ascertain the facts upon which our judgment is to be based. I may say, however, that I have looked over all the evidence in the case, and I do not find that the referee would have been justified in reporting otherwise than he has done in regard to the facts to which I have referred as not having been found by

him. There is no testimony that would have sustained the finding that the representations were fraudulent, or that the Ricketsons had taken measures to avoid the deed to the deceased, although it appears that they were aware of its existence several years before the trial.

The decision was apparently made by the referee as if the question had been presented to him in a proceeding by the Ricketsons to avoid the comptroller's deed. We do not assume to decide whether the Ricketsons can sustain an action for that purpose. It is not before us, and there are many and grave questions connected with it which should be carefully considered before reaching a conclusion on that question.

The present question is, however, entirely different. It does not follow, if Ricketson could maintain an action for fraud, that the plaintiff can do so. A fraud upon one does not form a claim on behalf of a stranger to the transaction, not claiming under the party defrauded. A fraud is an individual and personal thing. It is a cause of complaint to the person only, upon whom it is committed. No other person can claim a benefit from it. A recovery by any other person is no defense to a claim by the party defrauded. The estate of the deceased in the present case remains liable to the Ricketsons for the alleged fraud, not discharged at all by the large recovery of the plaintiff against him for the same fraud.

So, if Ricketson subsequently assented to the transaction between himself and the deceased, the title of the deceased would thereupon become good as against every one. This results necessarily from the position of the parties. The deceased obtained a legal title to the lands in question by the comptroller's deed of August, 1853. The confidence of Ricketson having been abused by the deceased, he would, under certain circumstances, be justified in attacking this title. But, until so attacked, the legal title is supreme. Should the injured party assent to and ratify the original transaction, the abandonment of his equitable claim removes all doubt from the legal title, and it is as if suspicion or embarrassment had never attached to it. Stevenson v. Newnham, 16 *Eng. L. & Eq.* 401, 408.

It is said in answer, "that judgments are not reversed in this court, because the facts found by the referee do not sus-

tain them, but that they will be sustained unless it appear that some rule of law has been violated. Grant *v.* Morse, 22 *N. Y.* 324; Milhau *v.* Sharp, 27 *Id.* 624; Brainerd *v.* Dunning, 30 *Id.* 211.

The papers before us show that several reports have been made by the referee in this action, and that in September, 1859, an order was made by the general term of the fourth district, striking out all reports supplementary to the original one, and directing the referee to make a further report, in which he should state in a plain and concise manner the facts found by him. In respose to this order the referee makes a new report, in which he says, "I hereby report the facts found by me in this case," &c. We cannot assume the existence of facts in opposition to those found by the referee for any purpose. But certain facts are expressly found, and certain other facts are studiously omitted to be found, and the existence of the latter are necessary to sustain a judgment, it is reasonably clear that a rule of law has been violated in rendering the judgment. Such is the present case. In neither of the reports contained in the case is there a finding of fraud on the part of the deceased, except in obtaining the comptroller's deed of 1851, with which transaction the present plaintiff is in no way connected, and from which he can derive no benefit; nor is there any finding that the recitals were intended to induce a purchase, or that the plaintiff relied upon their truth.

The contract of January 13, 1853, between the plaintiff and the deceased contained a recital in these words: "No. 80 I know to be unoccupied or non-resident land; the title to this lot is therefore perfect." The contract had just previously recited that the deceased had bid off these lots at a comptroller's sale for taxes, and that the time allowed by law for redemption had expired. If all these things as recited did concur, the title, as a legal proposition, may be said to have been perfect, and was not affected by an equity existing in favor of the Ricketsons. This is all the falsity or error that is pretended to have existed in relation to lot 80, and on account of which the referee gives a portion of the damages for which he makes his report. If this is error, as I think it is, the report must be set aside for this reason, although the referee were right as to the other two lots.

Bearing in mind that this is an action for fraud, I think the appellant is no better off as to the other two lots than as to No. 80. The deceased did not covenant to warrant the title;—that was to be at the risk of the vendee, except so far as the acts of the deceased may have affected it.

The statement as to the service of notice upon the occupants of these lots is not guaranteed by the deceased, nor does he presume to have precise knowledge thereof, as he did that lot 80 was unoccupied; the contract simply recites, that, notices having been served, and the time having expired, &c. The simple fact that notices had not been served, would not sustain an action for fraud in making this statement. Knowledge of its falsity, intentional concealment, or some similar fact tending to show fraud, must be proved, together with the plaintiff's reliance upon its truth. If the deceased had been error, the recital would have been false in fact, but it would not have been fraudulently so, and if any remedy existed, it would have been of another character. If the plaintiff had been aware of its falsity, or had suffered no damages therefrom, no action could have been sustained.

It is evident, upon an examination of all the facts reported by the referee, that the incorrect judgment in the case does not arise from a defective statement of facts, but from an erroneous application, in favor of the plaintiff, of that principle of law which would give the Ricketsons a supposed equitable defense, if the action to recover the lands had been brought against them. There is, therefore, a violation of the rules of law, such as is required by the authorities I have cited; and the report cannot be sustained. The order of the general term should be affirmed, and under the stipulation judgment absolute must be rendered in favor of the defendants.

A majority of the judges concurred.

Order affirmed, and judgment absolute for defendants, with costs.