(31 Misc. Rep. 148.)

### In re LANSING'S ESTATE.

(Surrogate's Court, Schenectady County. April, 1900.)

**1. TAXATION—INHERITANCE TAX—APPRAISERS—APPOINTMENT.**

Under Laws 1892, c. 399, § 11, providing that the surrogate, on application of any interested party, or on his own motion, shall, as often as and whenever occasion may require, appoint a competent person as appraiser of property of persons whose estate shall be subject to the payment of a succession tax, the surrogate has authority to appoint an appraiser to appraise property adjudged to be subject to the will of a deceased person in an action between the heirs, which property decedent had transferred, and which had escaped taxation by reason of the executor's claim that it was not a part of the estate.

**2. SAME—SUCCESSION TAX—PROCEEDINGS TO ASSESS AND COLLECT—FORMER ADJUDICATION.**

On a prior proceeding to impose a succession tax, the executor and heirs claimed that certain property had been transferred by decedent to one of the heirs during decedent's life, and hence was not subject to the succession tax; and other property which had been included in the same assignment, but which was afterwards controlled by decedent, was taxed as property of decedent's estate. Subsequently one of the heirs, who was a party to the first proceeding, brought an action against the executor and other heir to set aside the assignment as fraudulent. *Held,* that the adjudication by the surrogate in the former taxation proceeding that the property was not taxable, for the reason that it was transferred during life, and not in contemplation of death, while conclusive as between the estate and the state, did not preclude the state from imposing a succession tax on such property after it was adjudged that the transfer was fraudulent and void, since the heir who previously acquiesced in such claim, and as to whom the transfer was fraudulent, was the only person who could attack its validity.

Motion by Bertha De Land and others to vacate an order appointing an appraiser of the estate of Jane E. Lansing. Motion denied.

A. A. Yates, for comptroller and county treasurer.

Robert J. Landon and A. J. Dillingham, for representatives of estate.

STRONG, S. Mrs. Lansing died October 12, 1893. December 28, 1893, under the act then in force in relation to taxation of estates of decedents (chapter 399, Laws 1892), the surrogate, of his own motion, appointed an appraiser to ascertain and appraise the value of the decedent's estate, subject to taxation, under this act. The appraiser so appointed, on due notice to all parties interested, including the county treasurer, entered on the discharge of his duties, and thereafter made his report to this court, with the evidence taken by him. From this report and evidence it appeared that the decedent and her brother Edgar I. Truax, as the residuary legatees of their deceased father, Isaac I. Truax, owned or were entitled to quite a large personal estate; that on June 30, 1890, Mrs. Lansing and her brother, by a general assignment, pretended to convey to Bertha E. Lansing (now De Land), a daughter of Mrs. Lansing, all the personal property then owned by them jointly or severally, either individually or as executors of their father's will; that their property at that time consisted of bonds and mortgages, moneys deposited in banks, and some household furniture, all of which came to them under their father's will, and a considerable part of which still stood in their names as

his executors. What was the amount of this property, Mr. Truax, the witness examined before, and the active executor of Mrs. Lansing's will, refused to state, acting under the advice of counsel, who assumed the position that as all of Mrs. Lansing's personal estate passed to her daughter Bertha by this assignment of June 30, 1890, as to which there could be and was no suggestion that it was made in contemplation of death, the appraiser had no authority to inquire into that matter. It was admitted by counsel that the assignment was made to escape excessive and disproportionate taxation. The fact quite plainly appears that the assignment was for this particular purpose solely, because when, a day after it was made, it appeared from the opening of the assessors' books that the property had been assessed by them at a sum which Mr. Truax had told them he would acquiesce in, none of the parties to the assignment paid any further attention to it; the money being invested thereafter, as before, in the names of Mrs. Lansing and her brother, and the deposits kept in the name of the estate of Isaac I. Truax, deceased. This manner of dealing with the securities and deposits continued until October 3, 1893, when Mrs. Lansing, evidently in contemplation of her death, conveyed to her daughter Bertha, by specific assignment, her one-half interest in bonds and mortgages, amounting, in the aggregate, to $35,196.40, which up to that time had stood in the joint names of herself and brother, or in their names as executors of their father's will. At or about the same time the bank accounts, which up to that date had stood in the name of the estate of Isaac I. Truax, deceased, were transferred to the credit of Edgar I. Truax and his niece Bertha. The amount of those deposits was not ascertained by the appraiser, as the executor of Mr. Lansing, claiming, as has been stated, that her interests in them had been transferred by the assignment of June 30, 1890, declined to give any information on that point. The appraiser thereupon made his report to this court, finding, in effect, that Mrs. Lansing, on the 3d of October, 1893, was the owner of one-half of the bonds and mortgages then standing in the name of herself and brother, notwithstanding the assignment of June 30, 1890, and that, the specific assignment of this one-half interest made on October 3, 1893, having been made in contemplation of death, this one-half interest was subject to the tax imposed by the act in relation to taxable transfers of property. Chapter 399, Laws 1892. As to the bank deposits, the appraiser reported that he was unable to ascertain their amount by reason of the contumacy of the witness. This report was confirmed by the order of this court made on the 28th day of March, 1894, by which order a transfer tax was imposed upon Mrs. Lansing's one-half interest in the bonds and mortgages assigned by her on October 3, 1893; the order making no reference to the bank deposits referred to by the appraiser, and not assessing any tax thereon. In 1897, Mrs. Schwaman, the other daughter of Mrs. Lansing, and who, with her sister, Bertha, were the sole legatees under their mother's will, brought an action in the supreme court against her uncle Edgar I. Truax, and her sister, Bertha, to set aside the several assignments made by her mother and uncle to Bertha, so far as those assignments affected her (Mrs. Schwaman's) interest as a legatee under her moth-

er's will, or as one of the latter's next of kin. This action resulted in a judgment, obtained October 7, 1899, setting aside the several assignments above mentioned, so far as they affected Mrs. Schwaman's right to participate in her mother's personal estate, and directing the defendants in that action to account therefor as if no such assignments had been executed. From this judgment an appeal has been taken to the appellate division, where it is still pending undetermined. Under this judgment, Mrs. Schwaman, if she eventually succeeds, will acquire, as a legatee under her mother's will, not only the one-half of her mother's interest in the bonds and mortgages embraced within the first tax proceeding, but also the one-half of the moneys deposited in the banks, originally to the credit of the estate of Isaac I. Truax, deceased, but transferred in October, 1893, to the credit of Edgar I. Truax and his niece Bertha, which were not taxed in the first proceeding, because of the refusal of Mrs. Lansing's acting executor to disclose the amount of such deposits, and his claim that they were not part of Mrs. Lansing's estate, as her interest therein had been assigned by her on June 30, 1890, to her daughter. Very shortly after Mrs. Schwaman recovered her judgment, and most likely in consequence thereof, the county treasurer made the present application, which has for its object the taxation of the property which escaped taxation in the former proceedings for the reason and in the manner stated. The order granted in the present matter is attacked by the executors of Mrs. Lansing and by Mrs. Schwaman on two grounds: First, that the surrogate has no jurisdiction to make the order; second, that the prior order of March 28, 1893, is an adjudication finally determining that the property then owned by Mrs. Lansing, or to which she was entitled, other than the mortgages, was for some reason not taxable.

By the act in force when Mrs. Lansing died, the surrogate, "upon the application of any interested party, including county treasurers, * * * or upon his own motion, shall, as often as and whenever occasion may require, appoint a competent person as appraiser, to fix the fair market value, at the time of the transfer thereof, of property of persons whose estates shall be subject to the payment of any tax imposed by this act," etc. Chapter 399, Laws 1892, § 11. This provision is re-enacted in the present tax law. Tax Law, § 230. The plain intent and object of the several statutes, imposing a special tax upon the right of succession to the property of a decedent, had been and is to impose such tax upon all property so acquired from the decedent, those persons and such property as is exempted by the statute excepted. By all the statutes passed upon this subject, this tax has been declared to be due and payable at the time of the death of the decedent, and consequently, either by necessary implication, or by the express provisions of the several statutes, the appraisal of the property subject to the tax was and is required to be made as of the date of the decedent's death. In cases of testacy, however, it not infrequently happens that the testator, in the testamentary disposition of his property, creates future or contingent estates, the fair market value of which at his death it is impracticable to ascertain or fix; and, in cases both of testacy and intestacy, it may also happen

that for other particular reasons the value of property subject to the tax cannot be then ascertained, as, for instance, if the title to it be then undetermined; so, also, quite often the personal representatives when tax proceedings are had may be ignorant of property owned by their testator or intestate, which afterwards comes to their knowledge. Provision for the taxation of future or contingent estates whose value could not be determined at time of decedent's death is made in the act of 1892, by section 3, which declares that "taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event by reason of which the fair market value thereof cannot be ascertained at the time of the transfer, * * * shall accrue and become due and payable when the person * * *· beneficially entitled thereto shall come into actual possession or enjoyment thereof." Chapter 399, Laws 1892, § 3. A provision having the same object, but somewhat differently framed, is found in section 230 of the tax law (chapter 908, Laws 1896, § 230). While those provisions provide for future or contingent estates or interests in property, the value of which cannot be determined at decedent's death, they do not provide for other cases in which .it may be likewise impracticable or impossible to appraise the property or to fix the tax. Provision for the appraisal, not only of future or contingent estates, but for all such other cases, is made, as we think, by section 11 of the act of 1892 (chapter 399, Laws 1892), which authorizes the surrogate, "as often as and whenever occasion may require, to appoint a competent person as appraiser," etc. The same provision is to be found in section 230 of the present act (chapter 908, Laws 1896). This provision is evidently intended to meet all cases in which, for any reason, all the property could not be appraised and the tax fixed in one proceeding. When, as is alleged in this case, after an appraisal has once been had, property is adjudged to be a part of the decedent's estate, which in a former appraisal had been claimed by his personal representatives and legatees to be the property of another, there is nothing in the statute or in the nature of things which requires us to so limit the section in question as to exclude all authority in the taxing officer to secure for the state the tax which should be imposed upon it. If, therefore, in .this case, property is now shown to be a part of Mrs. Lansing's estate, which in the former proceeding was claimed by her executors and legatees to be the property of Mrs. De Land, and was so held by the surrogate, or if the surrogate has good reason to believe that to be the fact, we must hold that the statute authorizes a new appraisal. Whether this new proceeding be founded upon the petition of the county treasurer, and whether such petition be or be not open to criticism in certain respects, is immaterial, as the surrogate may appoint an appraiser upon his own motion "as often as and whenever occasion may require." The petition in this case states, upon information and belief, that "assets of such estates, consisting of moneys, securities, and other personal property, which were not disclosed or discovered on such appraisal [the one had in December, 1893], have subsequently been discovered, and are now in possession of the executor and heirs of

said estate." We are of the opinion that with the information thus brought to the notice of the surrogate, that property of the decedent has been discovered since the first appraisal, it is our duty to ascertain, in the manner provided by the statute, whether or not such is the fact.

Overruling, therefore, the objection that the order of October 14, 1899, appointing an appraiser, is without authority, we come to the question whether the former order of March 28, 1894, taxing Mrs. Lansing's one-half of the bonds and mortgages reported by the appraiser in that proceeding, is a bar to the present proceeding. The contention that the first appraisal, and the order made upon the report of the first appraisal, is an adjudication upon the question then presented to the surrogate for his decision, is, we think, well sustained. It is settled that the surrogate in these matters is the taxing officer or assessor representing the state, and by reason of his office authorized and called upon to decide whether the property of the decedent is taxable. In re Wolfe, 137 N. Y. 205, 212, 33 N. E. 156; In re Niven, 29 Misc. Rep. 550, 61 N. Y. Supp. 956. As the law stood in 1893 and 1894, when the first proceeding was had, the only remedy provided for the correction of any errors the surrogate may have made in his determination of the tax to which this estate was liable was by an appeal, as provided by section 13 of the act of 1892. Chapter 399, Laws 1892. As no appeal was taken from the surrogate's order of March 28, 1894, fixing the tax in this estate, the surrogate's determination, as expressed by that order, must be regarded as final and conclusive upon all the questions, both of law and of fact, then presented to him for adjudication. It would be a most unreasonable construction of the statute to hold that any error there made could be corrected by calling into exercise the powers conferred upon the surrogate by section 11 of the act of 1892, to order an appraisal as often as and whenever occasion might require; as this provision was evidently meant, as we have already said, to meet cases where all of an estate, for any reason, could not be appraised and taxed at one time and in one proceeding. Section 13 was amended by chapter 556, Laws 1895, so as to permit the state comptroller, if he believed an appraisal, assessment, or determination to have been fraudulently, collusively, or erroneously made, to apply to a justice of the supreme court for a reappraisal at any time within two years after the entry of the order fixing the tax. This amendment does not affect any of the questions raised on this motion, as more than two years elapsed before the present application was made, and as the application is made to the surrogate under section 230 of the tax law, and not to a supreme court justice, under section 232 of that statute. But while we yield an unqualified assent to the proposition that the order of October 28, 1894, is to be regarded as an adjudication binding upon the state and all the other parties to the present proceeding, and that no errors, if any, whether of law or of fact, then made are now to be corrected, we are unable to draw the conclusion therefrom which the learned counsel for Mrs. Schwaman and for the executors of the decedent ask.

Mrs. Schwaman and Mrs. De Land, who, with the state, are the only persons interested, were all parties to the first proceeding. The suggestion made by Mrs. Schwaman in her affidavit, that she knew nothing of that proceeding, is overthrown by the conclusive proof that she was duly served by the appraiser with notice of the hearing before him, and by the affidavit of the former surrogate that she was also served with a copy of his order of March 28, 1894. By this order the surrogate determined that so much of Mrs. Lansing's estate as was invested in the bonds and mortgages reported by the appraiser was taxable, notwithstanding the claim made by the executor, in the interests of Mrs. De Land and of Mrs. Schwaman, that it had been assigned to the former by the assignment of June 30, 1890. By not imposing any tax upon the other property which the evidence, as then returned by the appraiser, disclosed might have been owned at one time by Mrs. Lansing, the surrogate did, as counsel contended, inferentially decide that such other property was not then taxable. So far as concerned the property which has once been owned by Mrs. Lansing, and was then taxed by the surrogate, this was a practical recognition by him of the validity of the claim made by Mrs. Lansing's executor before the appraiser that the property was covered by the assignment of June 30, 1890. Both Mrs. De Land and Mrs. Schwaman, in whose behalf this claim was made, are to be deemed as having concurred in the position then taken for them, as they have accepted and enjoyed up to the present time the exemption secured thereby. Mrs. Schwaman, by action brought by her, has since had it judicially declared that this assignment of June 30, 1890, and all other transfers by Mrs. Lansing to Bertha since that time, were void, so far as affected her (Mrs. Schwaman's) rights under her mother's will; that is, Mrs. Schwaman now takes under her mother's will, if the present judgment of the supreme court is finally sustained, property which she could not take so long as the assignment of June 30, 1890, was in force. That assignment, while fraudulent and void as against Mrs. Schwaman, was valid as between the parties to it, and could be questioned only by her. Comstock v. Ames, 1 Abb. Dec. 411. As it now appears that this property is transferred by Mrs. Lansing's will, and not by the assignment of June 30, 1890, it became taxable under the statute.

It follows from what we have said that the motion to vacate the order of October 14, 1899, should be denied. As, however, it appears that an appeal has been taken from the judgment recovered by Mrs. Schwaman, and that the question of the validity of Mrs. Lansing's assignment is still in litigation, the appraiser appointed by that order will suspend action under it until such litigation is finally concluded. An order will be entered denying the motion made to vacate the order, but without costs.

Motion denied, without costs.