The People of the State of New York ex rel. Richard Whitney and Another, as Executors, etc., of George R. Sheldon, Deceased, Relators, v. M. Frank Loughman and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.*

Third Department, May 3, 1929.

*Mygatt, Smith & Delavina* [*Frederic E. Mygatt, Jr.*, of counsel], for the relators.

*Hamilton Ward, Attorney-General* [*Henry S. Manley, Assistant Attorney-General*, of counsel], for the respondents.

HINMAN, J. This is certiorari to review a determination of the State Tax Commission confirming an assessment of an additonal income tax against the relators for the year 1924 under article 16 of the Tax Law. The relators are executors and trustees under the will of George R. Sheldon, deceased, who died in New York county on January 14, 1919. Prior to his death and for many years Mr. Sheldon had been a member of the stock brokerage firm of William C. Sheldon & Co., of New York city. The decedent had, prior to his death, deposited with the firm, for its use, certain securities acquired by him by purchase at various times between 1902 and 1919 and costing not less than $273,451.88. These securities on January 1, 1919, had a market value of $255,282.59. They were firm assets, however, on January 14, 1919, the date of decedent's death, and chargeable with the firm debts. In the transfer tax appraisal on decedent's estate, the interest of decedent in this partnership was designated as having no market value at the time of his death. This was based upon a report of accountants, dated December 31, 1918, who audited the partnership accounts. It was apparently calculated at the time of the transfer tax appraisal that the firm assets, which included decedent's securities, did not exceed its liabilities as of the time of decedent's death. Shortly after decedent's death, the surviving partners commenced liquidation, and in the course of such liquidation they sold the securities contributed by decedent, resulting in a subsequent balancing of the partnership accounts as between the surviving partners and decedent's representatives and leaving in the decedent's account a credit balance of $252,326. Decedent's credit balance was settled and agreed upon at that figure. The securities contributed to the firm for its use by decedent were sold by the surviving partners on various dates between March 4, 1919, and March 28, 1919, the proceeds being the aggregate sum of $251,140.50. His account was also credited with certain minor items which brought decedent's

credit balance up to $252,326, which is substantially the value of his securities as valued on January 1, 1919, and as determined by their sale shortly after his death. The surviving partners did not pay to the estate this credit balance or any part of it for a number of years and we are not informed as to how far, if at all, it is to be finally cut down by the payment of firm debts. In December, 1924, however, the decedent's estate received $80,000 from the surviving partners " on account of such credit balance of $252,326." The State Tax Commission has levied a tax of $1,327.50 for the year 1924 on this $80,000 as income of the estate for that year. In its determination the State Tax Commission makes this explanation to the executors: " You are advised that profit to an estate on the sale or other disposition of property is the difference between the amount received and the transfer tax appraisal value of such property. As the interest of the above decedent in William C. Sheldon & Company was appraised as worthless and as there was received by his estate for said interest in the year 1924, $80,000, this amount constitutes taxable income for that year." Acting under the authority of section 383 of the Tax Law, which authorizes the Tax Commission to make such regulations " as it may deem necessary to enforce the provisions of this article " (Art. 16), the Tax Commission has adopted, as part of its Personal Income Tax Regulations, article 90, which, so far as applicable here, is as follows: " Art. 90. * * * In the case of property acquired by bequest, devise, or descent, or in the case of property of an estate disposed of by the executor or administrator during the process of settlement other than by a distribution to legatees, devisees, or other beneficiaries, in accordance with the terms of the will, or in the case of property included in the original estate and disposed of by the fiduciary, its value as appraised for the purpose of the New York State transfer tax * * * shall be considered the purchase price of such property." Presumably the Tax Commission has assumed to apply the above regulation to this case.

We think it has no application. By its terms, article 90 of the regulations applies to " property acquired by bequest, devise, or descent " or to property of an estate " disposed of by the executor." This is not the case of an income tax against a beneficiary for profit taken on " property acquired by bequest, devise, or descent." The $80,000 is part at least of the value of property " included in the original estate " but which has not been " disposed of " by the executors. Section 353 of the Tax Law relating to income tax, which provides the basis " for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property," must be read in connection with sections 354 and 355;

and the phrase " other disposition of property " must be construed to relate to the methods of disposition provided for in the subsequent sections, dealing with exchanges, and with reorganization, merger or consolidation of corporations, or with " dealings in property " as contained in section 359. (*People ex rel. Brewster* v. *Wendell,* 196 App. Div. 613, 615.) It is only a gain in the hands of the executors after acquisition by them, by " sale or other disposition of property " by them, which can properly be deemed income to the estate. In the case before us there was no " sale or other disposition of property " within the meaning of section 353 of the Tax Law. It was a mere receipt on account of property which, though uncertain in value, was a part of the original estate. We find no apparent legislative intention to regard " its value as appraised for the purpose of the New York State transfer tax " as having any bearing upon the taxation of this receipt for income tax purposes. The value of a chose in action, such as the unliquidated claim of the estate of a deceased partner to the partnership interest belonging to the estate, may be so uncertain and contingent at the time of death as to seem to have no market value and yet have a value which can only be determined at some date subsequent to the death of the decedent when a liquidation of the partnership has been had. The transfer tax is arbitrarily imposed upon a value computed as of the date of death unaffected by any contingency which may later affect the actual value transferred. This is to prevent confusion, uncertainty, unnecessary burden or impracticability in the collection of that tax. (*Matter of Penfold,* 216 N. Y. 163, 170.) If the State is aggrieved because no transfer tax has been assessed upon the partnership interest of this Sheldon estate, it may be due to the fact that it did not have the transfer tax appraisal postponed for a reasonable time to permit the liquidation of the partnership. (*Matter of Hubbard,* 234 N. Y. 175.) The order entered on the original appraisal may be a final adjudication. (*Matter of Rice,* 56 App. Div. 253; *Matter of Lansing,* 31 Misc. 148; *Matter of Morss,* 85 id. 676.) But if the estate is now foreclosed of such a right to appraise this partnership interest at any value that it may have actually had at the death of decedent, it is the fault of the State in not having had the appraisal of it postponed until after liquidation. Its failure to assess a proper transfer tax is no justification for assessing an income tax on a basis not clearly found in the law governing the collection of the latter tax.

The real question is whether the $80,000 came to the estate essentially as capital or income. Until Sheldon's interest in the partnership had been ascertained by liquidation, his executors had a mere equitable interest in the distribution of any surplus

remaining after the payment of the partnership debts, a mere chose in action, a mere right to claim the amount of money which the decedent's share would result in, nothing more; no particular piece of property or sum of money, a mere contingency which might or might not ripen into a legal right. One of the leading cases in this State on the effect of dissolution of a partnership by death of a partner is *Williams* v. *Whedon* (109 N. Y. 333), cited with approval in *Costello* v. *Costello* (209 id. 252, 259) and *Stem* v. *Warren* (227 id. 538, 546). In *Williams* v. *Whedon* (*supra,* 338) Chief Judge RUGER says: "Upon the death of one partner the surviving members of the firm become the legal owners of its assets by virtue of their survivorship, and have the exclusive right to sell, mortgage and dispose of them, in the performance of their duty in closing up the affairs of the partnership, and can do so in the manner they deem best for the interest of those concerned. The representatives of the deceased partner have no legal interest in such assets, and no legal right to interfere in their administration, so long as the survivor is prosecuting the business of closing up the estate, and applying its proceeds in the payment of firm debts. The survivors do not take such assets as trustees, but, as survivors, hold the legal title subject to such equitable rights as the representatives have in the due application of the proceeds. They may, therefore, require the application of the assets to the payment of partnership debts, but the time, manner and mode of doing so are a part of the administration of the estate which is under the exclusive control of the survivors. While such representatives have an equitable interest in the distribution of any surplus remaining after the payment of the debts, yet, until all of such debts are paid, it is a mere contingency which may or may not eventually ripen into a legal right." In *Matter of Lee* v. *Gilchrist* (215 App. Div. 576) and *People ex rel. Gwathmey* v. *State Tax Commission* (221 id. 812) we held that the money received by the estate of a deceased partner from the surviving partners in settlement of the partnership account was not income but capital paid to purchase and extinguish the partnership interest. (See, also, *U. S.* v. *Carter,* 19 F. [2d] 121.) The present case is not distinguishable in principle as to the essential character of the payment received by the Sheldon estate. The record shows that the partnership, dissolved by Sheldon's death, was promptly put in the course of liquidation by the surviving partners who were the legal owners of the assets. They had the exclusive right to sell the securities, which they promptly did, and to determine the time, manner and mode of closing up the affairs of the firm. In the course of the liquidation they finally stated an account with the estate and made

a payment ' on account of such credit balance." The credit balance is substantially the value of Sheldon's securities at the time of his death. The amount paid is less than that value. There certainly was no profit developed in the hands of the executors; and the surviving partners were not trustees for the estate of the deceased partner beyond the fulfillment of their obligations to pay the debts and distribute the surplus. (*Williams* v. *Whedon, supra,* 339.) If the surviving partners developed any profit subsequent to Sheldon's death, it was a profit accruing to them. (*People ex rel. Bass* v. *Loughman,* 218 App. Div. 795; affd., 244 N. Y. 513.) We do not know why it took so long for the surviving partners to make this payment on account of decedent's credit balance. Perhaps the partnership articles permitted such a delay. Presumably it took that long to liquidate the debts of the firm. The estate had nothing but an equitable interest until the debts were paid. Perhaps there were claims against the firm which did not materialize as debts after litigation. The surviving partners in the course of the liquidation may have assumed some of the debts because they had been personally responsible for them. Whatever the cause of the delay, the character of that which came to the estate seems clear. It represented acquisition value of the partnership interest. It was capital, not income to the estate.

The determination should be annulled, with fifty dollars costs and disbursements.

Van Kirk, P. J., Davis, Whitmyer and Hasbrouck, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements.