In the Matter of the Estate of SIDNEY H. SONN, Deceased.

Surrogate's Court, Westchester County, March 8, 1933.

*Limburg, Riegelman, Hirsch & Hess*, for the executors.

*Jacob Manicoff* [*Thomas P. McLaughlin* of counsel], for the State Tax Commission.

SLATER, S. This is an appeal from the *pro forma* order fixing the tax upon this estate. It comes to me pursuant to a stipulation that the same " shall be submitted to the Surrogate of Westchester County on affidavits, and that the matter in controversy shall be confined to the issues raised in the affidavit of John W. Briarly, sworn to December 15, 1932; answering affidavits of respondent to be served on the attorneys for the Estate on or before January 23, 1933; appellants' replying affidavits to be served three days thereafter; briefs to be exchanged between the parties on January 30, 1933, and filed with the Surrogate of Westchester County on the following day." This stipulation is dated January 16, 1933, and signed by the attorneys for the estate and for the State Tax Commission.

The decedent died on September 25, 1930, owning fifty per cent of the preferred and common stock of H. & S. Sonn, Inc. This company was incorporated in New York and was engaged in the real estate business.

This appeal involves thirteen items which are set forth in Mr. Briarly's affidavit, sworn to December 15, 1932, and the controversy affects the valuation of 2,500 shares of common stock of the said corporation owned by the decedent and representing one-half of the common stock ownership in such corporation. The issues presented to me relate to the valuation of certain real and personal property owned by the corporation and the worth of it ultimately to be considered in arriving at the value of such shares of stock. I will not attempt to figure out the value of the shares of stock but will confine my determination to the value of the real estate and the personal property raised by the appeal.

The first eight specific items involved are as follows:

| Item numbers. | Deponent's appraisal. | Tax appraiser's valuation. | Increase. |
|---|---|---|---|
| 1. 115th street and 8th avenue... | $180,000 00 | $200,000 00 | $20,000 00 |
| 2. 293–303 Hamilton avenue, White Plains............... | 55,000 00 | 73,000 00 | 18,000 00 |
| 3. 46 South Broadway, White Plains.................... | 70,000 00 | 82,000 00 | 12,000 00 |
| 4. Sunny Ridge, Harrison, New York, 60 acres............. | 240,000 00 | 276,900 00 | 36,900 00 |
| 5. 59 Hamilton avenue, White Plains.................... | 65,000 00 | 87,000 00 | 22,000 00 |
| 6. 1–7 Sherman avenue... ...... | 275,000 00 | 300,000 00 | 25,000 00 |
| 7. 854 West 180th street (interest of H. & S. Sonn, Inc., in this parcel $43\frac{3}{4}\%$).............. | 160,000 00 | 195,000 00 | 15,312 50 (being $43\frac{3}{4}\%$ of increase) |
| 8. Undercliff avenue, easterly side (interest of H. & S. Sonn, Inc., in this parcel $28\frac{1}{3}\%$)... | 37,500 00 | 45,000 00 | 2,125 00 (being $28\frac{1}{3}\%$ of increase) |
| Total increase......... | ............. | ............. | $151,337 50 |

Annexed to and made part of the tax appraiser's report is an affidavit of an expert appraiser fixing, in his judgment, the fair, reasonable and market value of the said properties. In such affidavit submitted by the executors, the value of the several parcels is fixed as the fair market value. Some of the valuations are *more* than the *assessed* values of the said parcels and, in some instances, the said valuations are *less* than the *assessed* values made by the town or city assessors upon the preceding tax roll.

The State assessing officer adopted the figures of the executors in all the cases where such values were *equal* to or *more* than the assessments made by the city or town assessors. In the eight cases presented to me upon this appeal, the assessor, except in one case, took the figures of the city or town assessing officer. In these eight cases the appraisements for the executors are at sums *less* than the assessments. Consequently, it appears that the State Tax Commission assessing officer had in mind as the proper, true, fair and market value the assessments made by the city or town assessors. It would further appear that no effort was made by the State Tax Commission to assess other than by this yardstick.

The appraisers for the estate are duly qualified as real estate experts. They examined the property and gave their judgment under oath as to the fair market value of each parcel. Against

this the yardstick of the town or city assessor is used. In many instances, where the State Tax Commission has accepted the figures of the executors, they are equal to and sometimes more than the town or city assessors' values. It is clear to my mind that the executors want to be fair about this matter. Of course, I have not examined the property, neither have I had any witness produced before me and my conclusion is predicated upon the stipulation and upon the affidavits of John W. Briarly, the appraiser of the estate, and the affidavit of James J. Fleming, the State Tax Appraiser.

The court will take judicial notice of the decreased value of real and personal property and the state of the world's finances in September, 1930, when the decedent died. The world catastrophe broke in October, 1929. A full year had elapsed thereafter before the death of the decedent. (*Matter of Jarvis*, 110 Misc. 5; *Matter of Winburn*, 140 id. 18.)

The principle of law laid down in *Matter of Hubbard* (234 N. Y. 175) should be invoked in the exercise of judicial discretion. (*People ex rel. Whitney* v. *Loughman*, 226 App. Div. 108; affd., 251 N. Y. 544.) In view of the condition of the market in September, 1930, and the fact that there had been a falling market for the preceding year, it may well be said that the value of real and personal property in September, 1930, was contingent and uncertain and an estimate of values at that time would be largely guesswork, with no market to point to to aid an expert or State tax appraiser. The town and city assessments, pointed to as an accurate measure for arriving at the true and market value of real estate, had been made the year before, pursuant to law, and before the financial break came. In September, 1930, the value of any real estate or personal assets, except as they might be marked on the stock exchange from day to day, was highly contingent and uncertain. The depth and extent of the panic as it existed in September, 1930, could only be measured by its later duration, thus the uncertainty of realty value at such date. It was likewise uncertain whether a second mortgage debtor would discharge his obligation, or whether the creditor would become submerged in total failure.

Certainly bad financial conditions existed at the time of the decedent's death in 1930. Its effect has unfolded itself to our vision at this date so that the uncertainty and contingency of values was clearly present at the time of his death. The result of that uncertainty is apparent now in the loss of values and the decreased valuations of real estate and the wiping out of second mortgages. The imposition of the tax herein has been suspended and now can be determined the value of the several real and personal items

and we are remitted to the date of death with such knowledge. Uncertainty and contingencies are overcome. True values are arrived at. I know of no authority to support the acceptance of assessors' valuations as a measure of fair market values. The courts have laid down a rule that the fair market value is ascertained pursuant to the opinions and evidence of experts and actual sales. (*Matter of Dupignac*, 123 Misc. 21; affd., 211 App. Div. 862.)

I conclude and fix the following values to be the fair and market values of the real property under consideration:

| Item numbers | Appraisal. |
|---|---|
| 1. 115th street and 8th avenue | $180,000 00 |
| 2. 293–303 Hamilton avenue, White Plains | 55,000 00 |
| 3. 46 South Broadway, White Plains | 70,000 00 |
| 4. Sunny Ridge, Harrison, New York, 60 acres | 240,000 00 |
| 5. 59 Hamilton avenue, White Plains | 65,000 00 |
| 6. 1–7 Sherman avenue | 275,000 00 |
| 7. 854 West 180th street (interest of H. & S. Sonn, Inc., in this parcel $43\frac{3}{4}\%$) | 160,000 00 |
| 8. Undercliff avenue, easterly side (interest of H. & S. Sonn, Inc., in this parcel $28\frac{1}{3}\%$) | 37,500 00 |

With relation to the appraised valuations of items 9 to 13:

Item 9 affects No. 2 Cromwell place, city of White Plains. Under the circumstances disclosed by the affidavits, the court will fix the appraisement to be made on this property at the time of the decedent's death at $50,000.

Item 10 is a purchase-money second mortgage, dated August 15, 1926, due August 15, 1934, in the sum of $97,950, on property at No. 365 Broadway, borough of Manhattan. It is subject to a prior mortgage of $175,000. In December, 1931, the owner defaulted in the payment of interest on both the first and second mortgage. Since that time the first mortgage has been foreclosed. The court will appraise this mortgage, at the time of the decedent's death, as of no value.

Item 11 is a second mortgage of $38,500, interest at six per cent, dated May 3, 1923, due May 3, 1931, with extensions to May, 1933. This is subordinate to a first mortgage of $125,000. No amortization payments were made on this mortgage after 1931. The first mortgage has been foreclosed, leaving no surplus moneys. I hold that this mortgage at the date of the decedent's death was without value.

Item 12 is a second mortgage for $29,875, dated January 5, 1923, due January 6, 1933, on property at No. 320 West Ninety-

ninth street, borough of Manhattan, subject to a prior mortgage of $187,500. No payments on account were made after January 1, 1932. The first mortgage has been foreclosed, the property sold to the first mortgagee and there remain no surplus moneys. I hold that at the time of the decedent's death this second mortgage was without value.

Item 13 is a second mortgage for $65,000, dated January 6, 1923, due January 1, 1933, on property at No. 171 West Seventy-first street, borough of Manhattan. This mortgage was subject to a prior mortgage of $1,000,000. Default was made in 1932. The property had been assessed at $1,550,000 and appraised at $1,350,000. No payment of interest on the first mortgage had been made and there was failure to pay the taxes. In the judgment of the court, the said mortgage is now and was, at the decedent's death, without value.

All these second mortgages were made by corporations and not by individuals so there was no collectible liability upon the bonds. The appraised value of the real estate affected by these second mortgages is not the main factor. The main factor is the financial and business condition of New York and the country, the lack of ability to produce sufficient income to pay the carrying charges, taxes and interest upon the mortgages.

Submit an amended taxing order pursuant to this opinion as it may affect the stock values.