In the Matter of the Estate of CATHERINE F. CONNELLY, Deceased.

Surrogate's Court, Broome County, April 30, 1934.

*Mangan & Mangan*, for the administrator.

*Ralph L. Emmons* [*William Dale O'Brien* of counsel], for the State Tax Commission.

BAKER, S.   This is an appeal taken by the First National Bank of Binghamton, N. Y., the administrator with the will annexed of Catherine F. Connelly, deceased, from the appraisement and determination of the estate tax as the same was determined by an order made by the surrogate of Broome county, and which order was entered in the office of the surrogate on the 9th day of February, 1933. This order was founded upon the report of Walker F. Sherwood, Broome county treasurer, as appraiser.

The particular ground upon which the appeal was taken is the claim that said order fixed the value of the real property known as Nos. 104–106 Court street at $87,900, when, in fact, the fair market value of such property was not to exceed the sum of $50,000, and that the order in fixing the market value of the gross estate of said decedent in the sum of $277,133.61 was erroneous and that in fact the amount of such gross estate should have been $239,233.61, and that the total amount of estate tax payable

from the said estate should be the sum of $2,412.77 instead of the sum of $3,322.57, which was the amount fixed by said order as the estate tax due from the estate.

Upon the hearing of this appeal it appeared that the real property in question consisted of a plot of land forty-four feet wide and one hundred and forty-one feet deep, situate on the southerly side of Court street in the city of Binghamton, N. Y., upon which lot is a brick building extending part way back on the lot and in the rear of which there is a parking space. The building consists of five stories and is an old one, which when the administrator took charge of the same was in a dilapidated condition inside. There is no heating apparatus in the building as the heat is furnished from outside sources. The first floor is occupied for a grocery store and the upper floors are arranged for living apartments, which are dark on the easterly and westerly sides, the front room and kitchen in each apartment being the only light rooms. The first floor or store premises rent for $225 per month. At the time of the death of the decedent two of these apartments were vacant and have remained vacant ever since.

When the administrator filed its return for the purpose of having the estate tax determined, the value of this property was placed at $50,000 by the administrator.

Walker F. Sherwood, the county treasurer of Broome county, who acted as appraiser, and upon whose report as such appraiser the value of the estate was fixed and the tax determined, testified that he had increased the value placed on the Court street property from $50,000 to $87,900, and that he had done this, not because of the fact that he believed the property was of the value of $87,900, but that he was " led to believe that this was perfectly satisfactory to both parties and that if he had known that the value was not satisfactory to the administrator he would not have placed the value of $87,900 on the property."

It was the contention of the State Tax Department that the value placed upon the property by the county treasurer as such appraiser was on the basis of its assessed valuation plus an additional or equalizing sum. There is no evidence submitted upon the hearing as to the actual assessed valuation of the property.

Section 220 of the Tax Law of the State of New York, which defines " taxable transfers," by paragraph 6 provides: " The tax imposed hereby shall be upon the clear market value of such property at the rates hereinafter prescribed."

Section 122 of the Decedent Estate Law provides as follows: " Whenever by reason of the provisions of any law of this state it shall become necessary to appraise in whole or in part the estate

of any deceased person, the persons whose duty it shall be to make such appraisal shall value the real estate at its full and true value, taking into consideration actual sales of neighboring real estate similarly situated during the year immediately preceding the date of such appraisal, *if any.*"

My attention has not been called to any provision of statute or any decision of any court of this State providing or holding that the assessed valuation shall be the basis for fixing the clear market value of the property of a decedent for the purpose of assessing the estate tax. On the other hand, it was held to the contrary by Surrogate SLATER by his decision rendered in *Matter of Sonn* (151 Misc. 487).

It appeared that experts who were acquainted with the value of real property in and about the city of Binghamton did not know of a sale of real property in the vicinity of the property in question for more than a year prior to the death of the decedent. It did appear that a five-story building on the northerly side of Court street, a practically new building with steel and brick construction, was sold for the sum of $57,500 and that this sale occurred during the early months of the year 1932, which was within a year subsequent to the death of the decedent.

It also appeared that during the year 1933, about a year and a half after the death of the decedent, a building which was two doors to the east of the property in question, and which consisted of a three-story building upon a lot one-half the width and of the same depth as the Connelly property, and with the same arrangement as to heat, was sold for the sum of $22,500.

Although the county treasurer, acting as appraiser, had the power, under section 230 of the Tax Law of the State of New York, to subpoena and compel the attendance of witnesses before him, and to take evidence of such witnesses under oath concerning the property, for the purpose of fixing its fair market value, in this case it does not appear that the county treasurer so did, but that, on the other hand, upon the erroneous assumption that the value which he placed on the same was agreeable to the administrator, he increased the value of this property from $50,000 to $87,900 without any evidence before him that such an increase was justified by the facts.

Upon behalf of the administrator three qualified experts as to the value of the real property in question were sworn. They each testified that for some time previous to the death of the decedent, and even up to the present time, there had been no market for real property because of the depression, of which the court can well take judicial notice.

In *Matter of Paterno* (182 App. Div. 478, 481) the court said: " These estimates of the experts are criticised by the Comptroller because they are based upon a forced sale, and it is correctly contended that, as a rule, a forced sale price is not a fair indication of market value. Where there is no market at all, it is obviously impossible to give an accurate statement of market value; but the tax has to be fixed and under such circumstances the nearest possible approximation to market value should be made. The nearest reasonable approximation is to have an expert state the price which the property will bring after fair and reasonable efforts have been made to find a purchaser, which of course includes a reasonable time being taken for this purpose as counter distinguished from a hurried or forced sale within a fixed and stated number of days. This, I think, was the fair purport of the opinions rendered by these experts and they strike me as entirely reasonable, considering the notoriously depressed state of the real estate market."

In explanation of the manner in which he arrived at his opinion as to the value given by him, one of the experts testified, in substance: " In establishing a value during this stress condition, I feel that in justice to the property, and in justice to all interests, one factor should be taken into consideration, the expectancy or anticipated value, because it is impossible under present conditions, and extending over a period of three or four years, to know what we might consider a fair value, therefore I think it has been the custom, and largely so with people in establishing values to-day, to take into consideration the expectancy or anticipated value in order to do the property justice and the various interests, because you cannot go out to-day and sell property on a basis of 50% of normal value which was established during the period of years from 1920 to 1925. To-day there is practically no market. The conditions were identically so in 1931 and 1932, and in fact the conditions are the same yet to-day. These conditions existed more than a year prior to the death of Miss Connelly."

The witness was then asked: " Taking into consideration all these circumstances, and with your experience and your knowledge of sales of real property in and about the City of Binghamton, what was the fair market value, and by that I mean what it would bring, of the property at 104–106 Court Street, belonging to Miss Connelly at the time of her death? By that I mean the fair market value, what it might sell for, not the anticipated or expectancy value which you might take into consideration in the future, but what it would sell for at the time of the death of Miss Connelly?"

The witness testified in response to this question: " I would say possibly $30,000, in the neighborhood of $30,000." " What would you say the fair market value of that property would be on an anticipated rise in the future when things would be normal? " The witness gave as his answer, $45,000.

The other witnesses for the administrator similarly testified as to the manner in which they arrived at their respective opinions as to the value of this property.

All of the experts sworn by the appellant testified that the fair market value of the property was less than the sum of $50,000, at which figure the administrator in its original return expressed the property as being worth. The sum of $45,000 was the highest value given by any of the experts, and that was on the basis of an anticipated and future rise in the value of real property, and was a higher value than any given by any of the witnesses as the value of the property at the time of Miss Connelly's death. The highest value testified to by any of the experts in that respect was $30,000.

The representatives of the State Tax Commission did not see fit to swear a single witness as to the fair market value of the real property at the time of the death of the decedent or at any time.

It was said in *Matter of Gale* (83 Misc. 686): " If the State Comptroller was dissatisfied with the valuation contained in the affidavits submitted by the appraiser on behalf of the estate, he should either have examined the affiant as to the basis of his valuation or submitted an appraisal by someone possessing the necessary qualifications for the appraisal of real estate."

Under the statute the fair market value was the one which should have been placed on the property in question for the purpose of assessing the estate. The fair market value should have been established by the testimony and evidence of witnesses or other substantial evidence from which the court might determine the fair market value.

The evidence as to its value produced by the administrator would appear to be fair and reasonable and sufficient to arrive at a fair valuation of the property in question.

Taking into account all the factors, the court determines that the real property in question should be valued at the sum of $50,000, instead of at the sum of $87,900, and the order fixing the tax should be modified accordingly.

Submit order on notice modifying accordingly the order fixing the tax.