Matter of the Judicial Settlement of the Account of HUGH S. JARVIS and WILLIAM J. PATTERSON, as Trustees under the Last Will and Testament of SAMUEL M. JARVIS, Deceased.

(Surrogate's Court, Westchester County, January, 1920.)

Executors and administrators — trusts — liability of trustees — accounting — estoppel — evidence — when trustees should be surcharged with loss upon securities — appeal.

Testator directed that a fund of $400,000 for one of his daughters should be retained by the executors and trustees for five years from his death and then paid to her.  Besides a precisely similar provision for the son of the testator the will created trusts for his widow and another daughter for their lives.  The will, authorizing the executors in their discretion to change any investments and to retain the securities representing the same as proper investments, directed that neither of the trustees should be liable for any loss to the estate or to any trust fund thereof, unless the same should occur through his own neglect or willful malfeasance, and in any case in which they were required by the will to divide any portion of the estate into shares or to distribute the same, they were given discretionary power to make the division or distribution in kind, partly in kind or in money, and to that end, to allot specific securities or any undivided interest therein to any share or shares, and for the purpose of such allotment the will declared that the judgment of the executors and trustees concerning the estate and the value thereof for the purpose of the distribution of the securities so allotted, should be final

Surrogate's Court, Westchester County, January, 1920. [Vol. 110.

and conclusive upon all persons interested in the estate. The estate not being possessed of sufficient securities at the time of the first accounting of the executors, it was agreed that the deferred legacies, the $400,000 trust funds, might be set up in part only, and the one to the daughter consisted of certain securities which the executors and trustees had in good faith and in the exercise of prudence purchased and which since and before the payment thereof to her under the terms of the will had depreciated, the loss being largely occasioned by .the decline in value of the Interborough Rapid Transit bonds which did not fall within the class of legal investments under the laws of this state. Upon the second accounting of the executors they were directed to complete the $400,000 trust funds. At the end of the five-year period the trustees delivered the securities theretofore set off to the fund for the daughter, to her husband as agent, and took a receipt signed by her containing the following reservation: " These securities are accepted by me upon condition that such acceptance shall not be considered as a determination of the question whether I shall bear any depreciation in the value of any of said securities or shall receive any appreciation in their value between the time they were placed in said fund by the trustees and the present date." Upon the settlement of the accounts of the executors and trustees the daughter contended that they were entitled to credit only for the value of the securities when delivered to her. *Held*, that having requested and assented to the appropriation of the securities for her deferred legacy fund she was estopped from claiming that the loss occasioned by the depreciation in the value of said securities should be charged against the residuary estate and that her objection to the account upon a claim that the whole depreciation should be made such a charge, will be overruled.

Evidence considered, and *held*, that part of the paper loss on the Interborough Rapid Transit bonds at the date of delivery of the securities to said daughter when the market was declining, having been created through the gross neglect of the trustees in continuing to retain such securities, they should jointly and severally be surcharged with such loss to the extent of the last ten points of the decline, or $5,000.

The decrees entered upon previous accountings considered, and held to be *res adjudicata* as to all matters embraced in the accounts, and not having been appealed from were not reviewable on the present proceedings.

PROCEEDING upon the judicial settlement of the accounts of trustees.

McCombs & Ryan (Frederick R. Ryan, of counsel), for executors and trustees.

Wollman & Wollman (Achilles H. Kohn, of counsel), for Permelia M. Vaughan.

Earl P. Hite, special guardian.

Henry R. Barrett, special guardian.

SLATER, S. This is an accounting by the trustees under the last will and testament of Samuel M. Jarvis, deceased. Certain objections have been filed to the account. This opinion will only deal with the objection filed by Permelia M. Vaughan. The contention between the trustees and Permelia M. Vaughan arises out of the appropriation of certain securities and the partial setting up of a fund of $400,000 for her under the terms of her father's will. The fund, as set up in part, depreciated owing to the decline in value of certain securities appropriated to the fund by the trustees. The trustees contend that they are entitled to be credited with the value of the securities as of the date of the setting up of the fund, namely: November 1, 1916. Mrs. Vaughan contends that the trustees are entitled to credit only for the value of the securities on the date they were delivered to her, namely: December 26, 1918. The depreciation of the securities between these two dates amounts to $18,912.79. The loss was largely occasioned by the decline in the value of $50,000 of Interborough Rapid Transit bonds, amounting to $13,375. The remainder of the loss occurred by reason

**8**            MATTER OF JARVIS.

of the slight decline of five certain other kinds of bonds as set forth in the stipulation of counsel dated December 18, 1919. I have not considered the decline of the securities, other than the Interborough Rapid Transit bonds, because the loss on each lot was small and the decline was consonant with all securities occasioned by the unsettled condition of the country.

Another fund of $400,000, provided by the will of the decedent for his son, Hugh S. Jarvis, one of the trustees, was set up in the same manner and suffered a similar depreciation.

Samuel M. Jarvis died December 26, 1913, leaving a will probated in this court on January 5, 1914. The testator gave to his daughter, Permelia M. Vaughan, $400,000 " which sum shall remain in the possession of my said Executors and Trustees for a period of five years from the time of my death and during such time my said Executors and Trustees shall collect and receive and pay over the net income thereof annually or more frequently if they shall deem best to my said daughter Permelia M. Vaughan, until the expiration of the said five years from the time of my death, at which time my said Executors and Trustees shall also pay to my said daughter the said principal sum of four hundred thousand dollars.'' The provision for the son, Hugh S. Jarvis, is precisely the same as that for his sister, Permelia M. Vaughan. The will also creates certain trusts for the widow and for another daughter, Mrs. Goodman, for their lives. Upon the death of the widow and Mrs. Goodman, the remainder passes into the residuary estate, which is given to the grandchildren of the decedent.

Article 12, section 5, of said will gives certain authority to the executors and trustees in these words: " I hereby authorize my Executors and Trustees in their discretion to *change* as they may see fit any

investments of which I may die possessed and *to retain the securities representing the same as proper investments* of the amounts of money to be held by them under the terms of this my Will.   *   *   * "

Section 7 of said article 12 says: "And I direct that neither of my Executors or Trustees shall be liable for any loss to my estate or to any trust fund thereof unless the same shall occur through his own gross neglect or willful malfeasance.   *.   *   * "

Section 8 of said article 12 relates to the division of the estate in these words: " *In any case* in which my Executors and Trustees are required under the provisions of this Will to divide any portion of my estate into parts or shares or to distribute the same, I authorize them in their discretion to make such division or distribution in kind, or partly in kind or partly in money, and to that end to *allot specific securities,* or any undivided interest therein to any share or shares and for the purpose of such allotment, the judgment of my Executors and Trustees concerning the property thereof and the relative value for the purpose of distribution of the securities so allotted shall be *final and conclusive upon all persons* interested in my estate."

In April, 1916, the executors filed in this court their first accounting. The account was verified February 6, 1916.   Objections were filed to said account by Mrs. Vaughan, wherein she said: " Said Executors have not set apart or established the deferred legacy in favor of said Permelia Jarvis Vaughan in the amount of four hundred thousand dollars as provided for in Article Two of said Will." In this first accounting proceeding, a decision was made by the court on December 6, 1916. Mrs. Vaughan consented to the entry of the decision by her own signature. The decree of the surrogate was thereafter made on December 26, 1916,

reciting that it was made upon the consent of all the parties, except the special guardian. Said decree followed the decision and directed the executors to set up, by paying and delivering to themselves, as soon as could conveniently be done, out of the principal remaining in their hands, the sum of $400,000 for Mrs. Vaughan and a like sum for Hugh S. Jarvis. It also provided for setting up the trust funds for the widow and for Mrs. Goodman. No appeal has ever been taken from the decree. The estate not being possessed of sufficient securities after setting up the several trust funds in full, it was agreed that the deferred legacies of Mrs. Vaughan and Hugh S. Jarvis might be set up in part only. The part set to Mrs. Vaughan amounted to $292,842.26. This partial fund was set up as of the date of November 1, 1916, and consisted of certain securities which, since that time and before the payment to her under the terms of the will, namely, December 26, 1918, had depreciated in value to the extent above stated. The fund for Hugh S. Jarvis was set up in the sum of $291,991.51. The executors accounted a second time in June, 1917. The decree upon this accounting recites the payment of a part of the deferred legacy fund to the trustees. It directs that they pay and deliver to themselves, as soon as conveniently may be done, out of the principal remaining in their hands, in money or in kind, or partly in money and partly in kind, pursuant to the powers conferred upon said executors by said will, the sum of $107,157.75 to complete the trust fund for Mrs. Vaughan and $108,008.49 to complete the trust fund for Hugh S. Jarvis. It was also decreed as follows: " Nothing herein determines or is intended to determine whether or not the bequest of $400,000 to Permelia M. Vaughan and Hugh S. Jarvis shall be paid to the said Permelia M. Vaughan and Hugh S. Jarvis in

cash or partly in cash and partly in property, or whether if paid to them in property, they shall be required to bear any depreciation or shall be entitled to receive any appreciation in value of said property between the time that same has been or may be turned over to the Trustees for their benefit at the time the same is delivered to them." No appeal has ever been taken from this decree.

The first trustees' account was filed in January, 1918. They accounted separately for the Permelia M. Vaughan legacy. The sixteenth finding of fact in the decision of the surrogate is as follows: " Said Trustees so set up and constituted said trust fund pursuant to the provisions of the Will of the testator and the provisions of law applicable thereto and with the *consent of Permelia Vaughan.* The *reinvestment of the funds of the said trust fund have been duly and properly made by said Trustees and the said Trustees have kept the said trust fund duly and properly invested during said period.*    *   *   *."

The nineteenth finding of fact reserved the right to Permelia M. Vaughan and Hugh S. Jarvis to raise the question of depreciation or appreciation in the value of the securities between the time the same had been set apart and the date of their ultimate delivery. A decree was entered on this decision on May 24, 1918. No appeal has ever been taken from said decree.

These decrees are *res adjudicata* as to all matters embraced in the accounts. They cannot now be reviewed. *Matter of Hood,* 90 N. Y. 512; *Matter of Tilden,* 98 id. 434.

December 26, 1918, being the end of the five years from the death of the decedent, according to the terms of the will, the trustees delivered to Mr. Vaughan, as agent and on behalf of his wife, the securities thereto-

fore set to her fund and took a receipt signed by Mrs. Vaughan containing the following reservation: '' These securities are accepted by me upon condition that such acceptance shall not be considered as a determination of the question whether I shall bear any depreciation in the value of any of said securities or shall receive any appreciation in their value between the time they were placed in said fund by the trustees and the present date.'' At the same time the securities in the fund of Hugh S. Jarvis were turned over to him. He gave no receipt for his securities.

There is a difference between a legacy and a trust fund. A vested legacy may be transferred by the owner, a beneficial interest in a trust created to pay income cannot be transferred by the *cestui que trust.* Legacies may be given so as to vest absolutely in the legatees, but at the same time postpone the time of the payment of the legacy. The legacies to Mrs. Vaughan and Hugh S. Jarvis were vested. The payment, however, was postponed simply for the benefit of the estate. The gifts may be called deferred legacies. *Matter of Lincoln Trust Co.,* 76 Misc. Rep. 421; *Matter of United States Trust Company,* 78 id. 230; *Zartman* v. *Ditmars,* 37 App. Div. 173; *Warner* v. *Durant,* 76 N. Y. 133; *Steinway* v. *Steinway,* 163 id. 183; *Cammann* v. *Bailey,* 210 id. 19; *Fulton Trust Co.* v. *Phillips,* 218 id. 573; *Matter of Hitchcock,* 222 id. 57.

They were simple general legacies regardless of their amounts. The legacies were not released from the burden of the administration until the debts were fully paid, and then the legacies became a charge upon the whole personal estate until relieved by the authority under the will and the assent of the legatees.

The executors became trustees of the assets for these legatees. The duty of investing and administering the fund was imposed upon them. *Lane* v. *Albert-*

*son,* 78 App. Div. 607; *Matter of Leonard,* 168 id. 12; *Mee* v. *Gordon,* 187 N. Y. 400.

The will, section 8, article 12, gave to the executors and trustees the right to divide into parts and shares, or to distribute and allot the same in money, or in kind. It may be said that the executors, under the terms of the will, had the right to appropriate the securities for these two deferred legacies without the consent of the beneficiaries. The law in this state is very meagre on the question of appropriation of securities for the purpose of creating a trust or providing for a vested legacy when the will is silent upon the subject.

*Leitch* v. *Wells,* 48 N. Y. 585, and *Collin* v. *Wilcox,* 65 Hun, 368, are the only two cases that reflect upon the question of appropriation of funds and they hold (the will not directing otherwise) that the formal consent of the beneficiary is necessary in order to release the residue of the estate from its liability to perform the trust. In *Collin* v. *Wilcox,* the court expressed the opinion that the executors had no right to limit the lien of the legacies. The question of the assent of the beneficiary apparently was not considered. Roper Legacies, 931, says: " Little is to be met with in the books upon the subject of appropriation of legacies."

The executors herein purchased Interborough Rapid Transit five per cent bonds in April, 1916, par value $100,000. These securities did not fall within the class of legal investments as determined by the legislature of this state and the law laid down in *King* v. *Talbot,* 40 N. Y. 76; *Matter of Wotton,* 59 App. Div. 584; affd., 167 N. Y. 629. It will be recalled that, by section 5 of article 12 of the will, the executors were given the right to *change* as they may see fit any investments left by the decedent, " *and to retain the securities represent-ing the same as proper investments;* " were not to be holden for any loss under the terms of section 7, article

12, unless it shall occur through their own *gross* neglect or willful malfeasance; and were authorized by section 8 of article 12 to allot specific securities, and the relative value shall be conclusive upon all persons interested. The trustees purchased these bonds in good faith and in the exercise of prudence. *Matter of Vom Saal,* 82 Misc. Rep. 531. It is my opinion that they had a right to purchase these securities under the ruling laid down by Mr. Justice Mills, of this department, in *Matter of United States Trust Co. (Colgate's Will),* 189 App. Div. 75, decided October 3, 1919. The authority to executors in the *Colgate* case is indeed quite similar to the authority accorded by the will of the decedent in the instant case.

Even without the authority given to the executors to allot specific securities to parts or shares for division or distribution, let us consider the part played by Permelia M. Vaughan in the matter of the appropriation of the securities set to her legacy fund. Did Permelia M. Vaughan assent, by her knowledge, by her acts and by her acquiescence, passive or otherwise, to the securities being appropriated by the executors to her deferred legacy fund? Did she, by any act, any knowledge or by acquiescence, change her possible right to subsequent objection? Can elements of concurrence, knowledge or acquiescence be found in the testimony in the case?

From the statements of counsel and from the evidence in the record, it appears that Mrs. Vaughan was consulted at the time and had knowledge of, and gave approval to, the purchase of the Interborough Rapid Transit bonds; that she personally asked for and consented to the appropriation of funds for the setting up of her deferred legacy; that selection of the securities for the funds belonging to Mrs. Vaughan and Hugh S. Jarvis was made largely by Hugh S. Jarvis,

the executor and beneficiary, and Mr. Vaughan, the husband of Permelia M. Vaughan. He had an office in common with Mr. Jarvis. Discussion and conferences continued for some time regarding the selection of these securities, and after the selection of the several securities had been agreed upon a tabulated statement of them was made by Mr. Jarvis and presented to Mrs. Vaughan personally. This all happened before December, 1916. The relations between these people were altogether friendly. The families resided near together in the country. Hugh S. Jarvis left a list of the securities contemplated for these funds personally with Mrs. Vaughan. Mr. Vaughan took it downtown in New York city to compare the prices of the different securities. After November 1, 1916, the income upon the securities set to this deferred legacy fund was paid to Mrs. Vaughan. The evidence shows that Hugh S. Jarvis wrote Mrs. Vaughan under date of December 22, 1916, enclosing in the letter a " list of the securities and cash with which this fund has been established." Mrs. Vaughan was then in Florida. The letter was duly acknowledged. Another letter was received in evidence, dated December 29, 1916, sent by one of the executors to Mr. Vaughan, enclosing an opinion of the attorney for the executors indicating that each fund must stand upon its own footing and Mrs. Vaughan and Mr. Jarvis would gain or lose, whichever the case may be. The letter says: " That being the case, I think we should know from you and Permelia whether you wish to take a different position. I think that we are entitled to know that now. I think we should be entitled to have from Permelia an acknowledgment of the fund as it is constituted up to the present time." This letter was acknowledged. The reply made no answer to the request to Mrs. Vaughan. Mr. Patterson, an executor and trustee, under date of March 20, 1917,

Surrogate's Court, Westchester County, January, 1920.　[Vol. 110.

wrote to Mr. Vaughan enclosing a letter to be handed to Mrs. Vaughan, saying: " You have already had a list of the securities constituting the trust in your favor under your father's will in so far as the trust has been set up. * * * To the end that we may meet your wishes, if possible, I would be pleased to have you indicate by letter your approval of the securities thus far chosen or, if you disapprove of any of these securities, will you kindly designate which? " Under date of March 23, 1917, she replied acknowledging the receipt of the letter and stated that she was acting under the advice of counsel and " have seen no reason why I should be called upon to approve or disapprove of anything at this time. Mr. Vaughan says you doubtless refer to one security, the I. R. T., which you might not have bought for my trust had you not had *his approval* and perhaps a mortgage bought with my approval. I do not expect to prejudice you by any act of Mr. Vaughan or myself." On April 3, 1917, Hugh S. Jarvis, as trustee, forwarded to Mrs. Vaughan a letter enclosing a copy of the income account as it then stood. On July 5, 1917, Mrs. Vaughan was addressed by the trustees and was asked how $15,000 in the trust fund should be invested. Mrs. Vaughan replied through her husband by letter and asked to have the investments made in trust company certificates of deposit.

It is my opinion that Permelia Vaughan having requested the appropriation of securities for her deferred legacy fund; with knowledge of the purchase of the Interborough Rapid Transit securities; having assented that $50,000 of Interborough Rapid Transit bonds be set to her legacy fund; never by any act raising even a doubt, until in the month of March, 1917, when she refused to approve or disapprove, it may well be held that she is not now in a position to look to the

residuary estate to make up the deficiency created by a decline in the value of the securities.  She had opportunity and did really participate in the investment of her own funds.  She was kept informed from the very beginning of every step taken in connection therewith.  Her husband had a desk in the office of the Jarvis Estate and was conversant with every detail of the estate.  She concedes the approval of the purchase of the Interborough Rapid Transit bonds and admits they might not have been purchased had she disapproved.  The evidence indicates that she stated she did not expect to hold the trustees liable, but she is now in court asking that the amount of depreciation be taken from the residuary estate which, under the terms of the will, passes over to the infant grandchildren of the decedent.  She certainly should not be allowed in this manner to take advantage of her own acts of approval and estoppel.  The evidence spells out her concurrence and acquiescence much more than passive.  She cannot now be permitted to charge the residuary estate.  There is no difference between authorizing and assenting.  She cannot stand by and even passively approve and thereafter claim advantage for herself.  In *Matter of Douglas,* 60 App. Div. 64, the court said: " the beneficiaries   *   *   *   knew, when the decree of 1892 was entered, that these bonds had not then been disposed of.  The account   *   *   *   showed that he had retained such bonds in his possession, and if they intended to hold him liable for any loss   *   *   *   or if they objected to his continuing to hold the same as securities   *   *   * they were then called upon to object,   *   *   *.   *Matter of Peck,* 31 App. Div. 407.''

In *Matter of Hall,* 164 N. Y. 196, several of the equitable life tenants consented to the investments made by the trustee, and it was held that they were estopped from questioning its propriety.  *Woodbridge*

2

v. *Bockes,* 59 App. Div. 503; affd., 170 N. Y. 596; *Washburn* v. *Rainier Co.,* 149 App. Div. 800; *Hine* v. *Hine,* 118 id. 585; *Matter of Vom Saal,* 82 Misc. Rep. 531.

Permelia Vaughan, having assented to the appropriation of those securities, is estopped and denied the right to claim a loss occasioned by the depreciation as a charge against the residuary estate. The reservations written in the decrees and in the receipt of Mrs. Vaughan were all subsequent to her acts which I believe estopped her.

It remains to be determined whether there is sufficient basis for the court to hold the trustees liable for lack of due care, or rather the exercise by them of gross neglect, because they did not sell the Interborough Rapid Transit securities on a declining market before December 26, 1918, when they were to be delivered to Mrs. Vaughan and Hugh S. Jarvis. The stipulation of counsel shows the range of prices of the Interborough Rapid Transit securities from November, 1916, to December, 1918. From this a judgment may be formed as to the time the bonds should have been sold, if sold at all. The will of the testator exempts the executors and trustees from liability except for "gross neglect or willful malfeasance." They undoubtedly acted throughout in good faith. There was no willful malfeasance upon their part. But trustees are held to great strictness in their dealings, and the court may regard them leniently when it appears they have acted in good faith and without an improper motive. The courts have even excused an apparent breach of trust, unless the negligence is gross. *Crabb* v. *Young,* 92 N. Y. 56. Every case, however, must be considered and decided in the light of its own facts. The country was in an unusual condition during the entire period of their control of the bonds. War was being waged in Europe. We entered the war in April, 1917. Prices

of material of all kinds and wages of employees had greatly increased. Higher fares upon this particular railroad to offset the added expenditures became and is still a public question. The government in control of standard railways had increased fares and freight rates. Because of these conditions the price of the securities steadily declined — the gap between revenue and expenditures ever widened — but the trustees failed to sell throughout this long period. I think it is not unreasonable and unjustifiable to say that the trustees should have sold the securities before December, 1918. The loss may not ever be a real money loss to Mrs. Vaughan if she still holds the bonds. With increased fares granted, the value of the bonds may return to par. However, there was a paper loss on December 26, 1918, and we are dealing with the condition upon that date. I am of the opinion that part of the loss was created through the gross neglect of the trustees in continuing to retain the bonds beyond the time when they should have been sold. The question is — when should they have sold the bonds to permit them to escape the censure of the court?

Gross neglect is defined as want of care, diligence and prudence. 29 Cyc. 423. Section 2733 of the Code of Civil Procedure says: " Nor shall he sustain any loss by the decrease or loss, without his fault, of any part of the estate or fund." Without his fault means a common sense standard of prudence and proper diligence. The use of the words " gross neglect " by the testator gave no greater latitude to the executors and trustees than is given by the Code. In my opinion, the trustees, in the exercise of due care, diligence, prudence and active vigilance, should have sold the bonds by the month of June, 1918, when the market had declined to eighty-two and showed every evidence of further decline. In April, 1918,

Surrogate's Court, Westchester County, January, 1920. [Vol. 110.

the legislature had adjourned without granting relief to the Interborough Rapid Transit Company, which had asked for an increase of fares. The municipal administration in Greater New York was and is still hostile to the company. It was and is still active in the endeavor to force municipal ownership and operation, creating a change in our theory of government. It sought then and still seeks to act in a manner which will cause the wreck of this property. The end of the war was not in sight. With all these depressing and deplorable conditions, careful trustees should have foreseen that a further decline was sure and certain. These trustees should have sold the bonds, taken the actual loss and thereby saved themselves from criticism and liability. They should not have retained them except upon the consent of the beneficiary. The loss resulted from the retention of the securities. *Villard* v. *Villard,* 219 N. Y. 482. The well-settled rules against laxity of trustees must not be impaired. I do not intend to hold them to a stricter degree of responsibility than ought to be severally required from executors and trustees.

I shall surcharge the trustees for a part of the loss sustained by Mrs. Vaughan to the extent of the last ten points of the decline, or $5,000.

Hugh S. Jarvis, beneficiary of one of the deferred legacy funds, makes no claim or contention upon this accounting for any loss resulting to him. Even if he did, he would be precluded because he is an executor and trustee and could not take advantage of his own acts.

The objection of Mrs. Vaughan to said account, claiming that the whole depreciation should be made a charge against the residuary estate, should be, and the same is, overruled and is in no respect sustained.

The trustees are, however, jointly and severally sur-

charged with $5,000 loss in favor of Mrs. Vaughan for the retention of the securities beyond the period when, in my judgment, a prudent trustee should have sold them.

Decreed accordingly.