In the Matter of the Estate of JESSE WINBURN, Deceased.

Surrogate's Court, Westchester County, April 28, 1931.

*Henry R. Barrett* and *Townsend, Guiterman & Wilson* [*Arthur D. Brennan* of counsel], for the executors.

*Weinberg Brothers* [*Isaac F. Stahl* of counsel], for the objectants.

*Frederick H. Berges, Jr.,* special guardian.

SLATER, S.   The decedent died July 21, 1929, leaving a last will and testament duly admitted to probate.   On October 25, 1929, letters testamentary were issued to the accounting executors.   The executors filed their account, dated September 24, 1930.

Two of the beneficiaries named in the will seek to surcharge the executors for failure to sell securities, and claim that the executors are guilty of gross negligence in failing to dispose of such securities at the highest market value obtainable.   The special guardian interposed a similar objection.

The securities to which the objections relate are as follows: 1,400 shares of Montgomery Ward (common stock); 390 shares National City Bank of New York (capital stock); 373 shares Chase National Bank of City of New York (capital stock); 240 shares Bankers Trust of New York (capital stock); 200 shares Consolidated Gas Company of New York (common stock); 100 shares of New York Central Railroad Company (capital stock); 200 shares of Radio Corporation of America (preferred B); 300 shares Union Carbide and Carbon Corporation (capital stock); 100 shares Southern Railway Company (common); 100 shares Atchison, Topeka and Santa Fe Railway Company (common); 100 shares Union Pacific Railroad Company (common); 100 shares Standard Oil Company of New York (capital stock); 150 shares Standard Oil Company of Indiana (capital stock).

The decedent's will was executed April 9, 1929.   After payment of legacies, he directed the executors to divide the residuary estate into ten equal parts and to hold, invest and reinvest the said parts and pay the income thereof to life beneficiaries.

The following clause of the will affects the question:

" *Eleventh.*   *   *   *   I expressly absolve   and   release   my executors from any and all duty or obligation to sell, convert, collect or otherwise realize on the property, assets or securities which I may own at the time of my death, and declare that a transfer and delivery in kind of any property or securities received, acquired or invested in by my executors shall be full and complete protection to my executors, and performance of their duties hereunder.   I direct the trustees of the trusts herein created to receive such items of property as shall be allotted and given by my executors to said trustees.   I authorize the trustees of the trusts created by this instrument to receive and invest the trust property or part thereof without division of the principal among the several trusts, so far as may be permitted by law, making proper division of the income as received among the beneficiaries entitled thereto. I further authorize the trustees of the several trusts created by this instrument to value and divide and allot the property held in trust

when said trusts shall severally terminate, or when occasion may require. All such valuations, partitions and allotments so made shall be binding upon all the parties at any time interested in the same under this instrument.

"I authorize the trustees of the several trusts herein created, in their discretion, to retain for any period of time any investments left by me and any securities received by them in exchange for any such investments."

The stocks above enumerated were the identical stocks received by the executors, except in two instances where the original number of shares were added to by the taking over of stock dividends. The executors have neither purchased nor sold any of the stocks mentioned in the objections.

The only evidence offered by the objectants in support of the charge of gross negligence was the record of the monthly high and low prices of the stocks for the months from December, 1929, to September, 1930. The objectants' position is that the executors failed to sell the stocks at the highest market price, and their consequent depreciation makes it a case of gross negligence.

The executors gave proof, by a witness who qualified as an expert in trust investments, that the stocks are all seasoned stocks of good companies, and that the general business conditions since October, 1929, have been abnormal. Other than such offered evidence, the court will take judicial notice that the business depression since such time has been the worst and most far-reaching in the history of the world.

When the decedent directed his executors to divide his estate in ten equal parts, he must have contemplated that these stocks should continue to be part of the several trust funds. This is emphasized (1) by releasing and absolving the executors from any duty to sell; (2) by declaring that the delivery in kind of securities so received shall be a complete and full protection to the executors; (3) by directing the trustees to receive from the executors such items of property as may be allotted by the executors to the trustees; and, finally, (4) the authority given to trustees to retain for any period of time any investments left by him.

Such provisions are in themselves protection to these executors unless there is proof of fraud or gross negligence. (*Matter of Jarvis*, 110 Misc. 5; *Gould* v. *Gould*, 126 id. 54; *Matter of Knower*, 121 id. 208; *Matter of Clark*, 136 id. 881; affd., 232 App. Div. 781.)

The stocks are not of a speculative character, subject to great and sudden fluctuations in value. They are stocks purchased by the decedent and found among the assets of his estate. That the testator thought well of them the will gives ample evidence. Stocks

of this character ought not to be timidly and hastily sacrificed. Even where there is direction to sell, which is not present in the instant case, a reasonable time must be given and what that shall be determined in each case by its own facts.

A statement received in evidence shows that the first buying of stocks left by the decedent commenced in some cases in 1902, most of the stocks being purchased between the years 1925 and 1928. These stocks were not " legal securities " for the investment of trust funds and, evidently because of that fact, the testator was disposed to grant to his executors great liberty in the retention of the same. (*Matter of Hall,* 164 N. Y. 196, 199.)

Under the will of the testator, neither the executors nor the trustees have authority to invest in other than legal securities. Jesse Winburn practically said by the words of his will: " Keep all the securities I have bought, whether they are legal securities or otherwise; but, when you purchase, you must buy only legal securities."

The decedent was evidently a conservative business man. He acquired only securities of seasoned corporations. The companies of which he bought stock are well entrenched and protected by careful business management, so that in slow times their earnings and surplus are such that normal dividends are declared.

The stocks other than the bank stocks are given a rating in Moody's Book of Stock Ratings — some as A, others AA, BA and B. The AA rating is a high investment rating and given to few common stocks. It indicates a dominant position in the industry, tremendous earning power, and ample cash resources. The rating of A comes in the investment group, but to a lesser degree. B is the rating applied to the stocks of companies which give the expectation of a regular dividend payment. BA is given to a common stock when the company has shown definite progress in its line, has built up reasonable equities for its securities, and has shown a reasonable ability to continue dividend payments.

There is a distinction between seasoned securities of the character here involved and investments in speculative securities, as is pointed out in *Matter of Hall* (*supra,* 199); *Matter of Wilmerding* (135 Misc. 674).

Cases are found wherein the depreciation of values of seasoned securities are accounted for by a general business depression and, in such instances, the courts have refused to surcharge representatives of the estate. (*Matter of Weston,* 91 N. Y. 502; *Matter of Thompson,* 41 Misc. 420; affd., 178 N. Y. 554; *Matter of United States Trust Co.,* 189 App. Div. 75; *Matter of Varet,* 181 id. 446; affd., 224 N. Y. 573.)

There is a difference between investments by trustees of trust funds and the retention of securities purchased by the testator and held by him at the time of his decease. (*Jones* v. *Jones*, 2 N. Y. Supp. 844.)

There is no need for executors to jettison worth-while stocks during a financial panic. Executors need not wait on the stock market, but may properly be guided by the tests to be applied, which are: What has been the history of the companies during a period of years? Have they paid regular dividends of regular amounts? Have they a proper capital structure? Are they wisely officered? Has a successful business continued over a period of time? Have they achieved a standing in commercial circles? Have they behind them an established dividend record over a period of years? (*Matter of Leonard,* 118 Misc. 598.)

The ups and downs of the Wall Street daily market quotations are not the mercury that must be strictly followed to decide whether it is wise to keep or sell stocks of the character of those in the instant case. Executors and trustees cannot be watchers of the tape, nor gamblers in stocks. They hold securities under the terms of wills or trust instruments. Various stocks at times advance in the face of irregular and ever-declining markets by the activity of pools. The ticker tape does not always reflect the character of the seasoned corporation. The stock market waits on business revival. The prices of stocks are bound to many movements and go up and down in response to conditions.

The evidence with reference to these well-seasoned corporations, in connection with their corporate management, capital structure, earnings and dividends, clearly indicates that, while these stocks have been depressed in the stock market with every other stock, they have ridden, and are still riding, the financial storm in good shape.

" The decline was consonant with all securities occasioned by the unsettled condition of the country." (*Matter of Jarvis,* 110 Misc. 5, 8.)

The evidence of the expert indicates the eventual restoration of normal times, and it cannot be said that it was unwise not to expect and wait for it. The instant case is not one where the executors were directed to sell, or where part of the stocks were held on margin, but rather a case where the decedent showed an intent that he wanted the stocks which he had acquired to pass into the trusts which he created by his will, because of their continued earning capacity.

The language of the testator in the 11th paragraph of the will

is not precatory. He gives absolute release to the executors and the court will only hold them for gross negligence in not selling.

Are the executors guilty of negligence? The burden of proof is upon the party seeking to surcharge to show negligence in failing to sell. In sustaining the burden they have failed. It is my opinion that the executors have acted without negligence and employed vigilance, sagacity and prudence as in general prudent men of discretion and intelligence, in like matters, employ in their own affairs. (*Brown* v. *Cleveland Trust Co.*, 233 N. Y. 399, 405; *Matter of Clark, supra; Matter of Hurlbut*, 210 App. Div. 456.)

Executors of an estate have a limit of time, either six months or one year, to proceed to execute the settlement of a decedent's affairs. This does not obtain with trustees. When the executors took over the estate herein, a financial storm had set in — not country-wide but world-wide. And, in the exercise of their judgment, they continued to hold the securities for the purpose of passing them on to the trustees. The storm has not yet subsided. There is a strong undercurrent of depression still running. In the face of such conditions, I think it would be unreasonable to hold executors liable for retaining such well-seasoned securities in the light of the terms of the will and the intent of the testator.

In *Matter of Thompson* (*supra*) the court, in commenting upon the claim of the objectants that the securities should be sold, said: " To foresee such periods of general depression, or periods when high prices prevail, is the constant effort of the keenest intellects in the financial world, but notwithstanding their tireless vigilance and efforts stimulated by the hope of great gains, they frequently find such knowledge too high for them. The law does not require such prescience of administrators."

If foresight were generally as good as hindsight, it would be a far more pleasant world in which to live. I wonder if the objectors would have asked for a surcharge if the executors had sold the securities and, within a reasonable time thereafter, the stock market had shown a good advance! (*Matter of Mercantile Trust Co.*, 210 N. Y. 83; *Matter of Hosford*, 27 App. Div. 427; *Matter of Lazar*, 139 Misc. 261.)

Regardless of the absolving provisions of the testator's will, the executors were warranted in retaining these well-seasoned stocks for the period of time less than twelve months after the issuance of letters testamentary at a period of world panic. In *Matter of Varet* (*supra*) the court, in declining to surcharge, arrived at a decision in the face of the following provision in the will: " I do order and direct my executor hereinafter named, as soon as

may be after my decease to sell, either at public or private sale and convert into money all the real and personal property."

It is my conclusion that no negligence on the part of the executors, in continuing to hold the securities in the instant case, was established. The objection is dismissed. Submit decision and decree confirming these views.