In the Matter of the Estate of PETER KINNEAR, Deceased.

Surrogate's Court, Albany County, September 21, 1933.

*Rollin B. Sanford* for the petitioner.

*John J. McManus*, for the respondent.

ROGAN, S. This is a discovery proceeding brought by Timothy E. Roland, as administrator with will annexed of Peter Kinnear, deceased, against Katherine L. Kinnear, respondent herein. The facts may be stated as follows: Peter Kinnear died leaving a last will and testament which was duly admitted to probate in this court on May 26, 1913. He named his son, David M. Kinnear, and his son-in-law, Charles G. Ogden, as executors. The estate was a large one, and David M. Kinnear, one of the executors, and his sister, Mrs. Charles Ogden, were the residuary legatees. A codicil of the will of Peter Kinnear creates the following trust:

"*Second.* I now desire that a sum be set apart sufficient to insure an income of $1,000 per annum to the heirs of my deceased son, Henry C. Kinnear; the same to be held in trust by my Executors, and the income to be paid by the said Executors to the heirs of my deceased son, Henry C. Kinnear, in equal quarterly installments on the first day of January, April, July and October. In the event of the death of Mrs. Elizabeth M. Kinnear, my Executors are to have the power to divide the principal sum equally between Frank P. Kinnear and Annie G. Kinnear, if in their judgment it seems best to do so."

Upon the death of Peter Kinnear the executors began to administer the personal estate of the decedent; transfer tax proceedings were had, and the gross real and personal estate amounted to upward of $265,000. All of the specific legacies were paid, and the debts, funeral expenses and administration expenses were

also paid. Some time during the year 1918 the executors got together and divided the whole remaining estate between the two children of the decedent, the residuary legatees. At the time of the division between the residuary legatees, $20,000 of five per cent bonds were retained by David M. Kinnear for a trust fund under the second codicil to said will for the purpose of providing $1,000 per annum to satisfy the purposes of the above trust. The property set aside for the purposes of the trust consisted of ten five per cent bonds of Watertown Light and Power Company, and ten five per cent bonds of Fairmont Coal Company. Later David M. Kinnear sold the above-mentioned bonds so set aside, and in the year 1927 bought 55 shares of American Telegraph and Telephone stock, and 63 shares of Celluloid Company stock. Upon these latter stocks he borrowed money for his own personal account, ultimately converting the proceeds of the sale of these stocks to his own use. Said sale was made in the year 1929. From 1913 until 1929 the income derived from said bonds, and after their sale from said stocks, was used by the executors for the payment of the $1,000 annuity as provided for in the second codicil to the will of the decedent. No proceedings for the judicial settlement of the accounts of the executors were had prior to the death of Charles G. Ogden. In April, 1932, Annie K. Scott, one of the annuitants, brought in this court a compulsory proceeding for an accounting by said David M. Kinnear, as surviving executor of said estate of Peter Kinnear. Thereafter his account was surcharged in the sum of $16,187.98, the amount of the proceeds of the sale of said bonds and stock set apart for the purposes of said trust in favor of Annie K. Scott and Frank P. Kinnear, the annuitants, and by said decree David M. Kinnear was removed as executor. It appears that David M. Kinnear made fictitious entries upon the books of the executors since the year 1929, and while the annuitants received their annuity up to the date of the entry of the decree surcharging said David M. Kinnear's accounts, the money came from sources other than from any securities of the estate.

Respondent was married to David Kinnear in 1914, and separated from him in 1929. In about the year 1918, and in the few years following, David M. Kinnear gave to the respondent without any consideration, as a gift, substantially all of the property that he had acquired from the estate of his father. Of this property given to her the respondent selected certain securities of the value of $8,620, which she admits she still has in their original form, and admits they are the same securities given her by her husband. She claims title by reason of gift. These securities

together with the title to premises No. 490½ Western avenue, Albany, N. Y., which is now held by the administrator with will annexed, would be practically sufficient to satisfy the purposes of the trust, as likely to produce an income of $1,000 per year. The sole question, therefore, to be decided is, could the executor himself acquire any title as a residuary legatee, and could he confer any title upon his wife without first performing the conditions imposed by the trust? The respondent contends that the estate has been fully administered by the executors and that the administrator with will annexed cannot maintain this proceeding, and that this court has no jurisdiction.

At the outset we must determine whether the residue of the estate of Peter Kinnear could be released from this liability for the performance of the trust without the consent of Frank Kinnear and Annie K. Scott. There is ample evidence to sustain a finding that neither of these beneficiaries had any knowledge or information as to the methods adopted by the executors to comply with the requirements of the testator as to this trust fund. It should be noted that the will did not direct the setting apart of any definite securities. It did not even name a particular sum to be set apart. It directed merely that " a sum be set apart sufficient to insure an income of $1,000 per annum." The executors never, within the meaning of the will, set apart anything. The gesture of good intention made by the two executors in handing over to David M. Kinnear the bonds was not the setting up of a trust even though the bonds were placed in the safe deposit box of David M. Kinnear, the coexecutor. Something more was required to constitute the setting up of a trust, to accomplish the intent of the decedent. As has been stated before, neither of the beneficiaries knew what securities had been set apart, and while they were receiving $1,000 a year they probably felt secure in the certainty that the payments would continue, and there was no legal obligation on their part to find out. The executors could have set apart certain property and appropriated it to the satisfaction of the trust, but such appropriation could only have been made with the consent of the beneficiaries. If the consent of the beneficiaries had been obtained, the residue of the estate could have been relieved from liability to perform the trust, but until the beneficiaries accepted the appropriation or consented to it the estate could not be distributed to the residuary legatees free from the liability to perform the trust. (*Leitch* v. *Wells;* 48 N. Y. 585; *Collin* v. *Wilcox,* 65 Hun, 368, 376; *Matter of Jarvis,* 110 Misc. 5, 13.)

" To relieve the trustee from liability * * * the *cestui que trust* should be *sui juris* and capable of acting for himself, and the

acquiescence must be with full knowledge of the facts and circumstances * * * with knowledge as to his legal rights. Evidence of such acquiescence must be full and satisfactory, and the same measure of proof will be required." (39 Cyc. 414.)

The rule quoted from Cyc. is the rule in this State (*Adair* v. *Brimmer*, 74 N. Y. 539.) In the light of this doctrine it is evident that the executors without an order from the court, or without the consent of the beneficiaries, could not, by earmarking securities of their selection, release the residue of the estate from its liability to perform the trust. Where the will bequeaths an annuity and it is evident from the terms of the document that the testator had charged the annuity upon all of the assets of the estate, his direction must prevail whether the assets of the estate have gone into the hands of the residuary legatees or not. (*Dunham* v. *Deraismes*, 165 N. Y. 65.) The residuary legatees knew that nothing specific was given to them, but only that which remained of the estate after the debts and legacies had been paid. It behooved them more especially to have the estate settled up and the residue judicially ascertained. If they chose to demand or receive moneys and securities from the executors without any warrant in law, or any judicial settlement of their accounts, they take them with all of the risks attending such premature payment. Of course there might be a case where a residuary legatee has been paid by the executor in good faith, and when apparently entitled to the payment, and then any subsequent insolvency of the executor resulting in the loss of a fund set apart and held for a legatee would not create a liability to refund. Such a case was *Wolcott* v. *Hall* (2 Brown Ch. 305). But here we have a very simple problem. The actual securities that came from the estate of Peter Kinnear are in the hands of the wife of the executor who received them without cost or consideration. If she had been a *bona fide* purchaser for value and held these securities, we would have a different question. Not having acquired legal title there are no equities in her favor. Where the loss of a fund is due to the waste of a residuary legatee who is also an executor and trustee, he and his estate alone must be looked to first. No claim for contribution arises against the remaining residuary legatees in such a case until it is discovered that there is a deficiency of assets for distribution under the will, caused by the diminution of the estate through the premature payment of the legacies.

The fraud of the executor was not discovered by the *cestui que trust* until the proceeding for the accounting was brought in 1932; consequently their cause of action did not accrue until the discovery of the fraud.

But one other question remains for our consideration. As I find that Mrs. Kinnear, the respondent, had actual notice that the funds and securities delivered to her came from the estate of Peter Kinnear of which her husband was an executor and residuary legatee, she is charged with notice of the will and its contents, and she acquired no title greater than that of David M. Kinnear himself. She received them without consideration. The respondent could get no title to the securities in question except through her husband as executor or residuary legatee. As residuary legatee he had no title to give until he first performed his duties as executor and set up the trust in conformity with the will. She, therefore, cannot be considered a holder for value, or rightfully entitled to retain their possession. These securities still belong to the estate of Peter Kinnear, and are being wrongfully withheld.

Since the amendment to section 206 of the Surrogate's Court Act in effect September 1, 1924, there has been no room for doubt as to the jurisdiction of the surrogate. The case of *Matter of Akin* (248 N. Y. 202) may now be considered the leading case on the question of jurisdiction of the Surrogate's Court in discovery proceedings. In that case LEHMAN, J., said (at p. 206): " In *Matter of Hyams* (237 N. Y. 211) this court pointed out that under the statute as it then existed, the jurisdiction of the surrogate in discovery proceedings is in terms limited to an inquiry and decree concerning ' specific personal property which was owned by the decedent in his lifetime.' The next year the Legislature amended sections 205 and 206 of the Surrogate's Court Act so as to remove even that limitation. (L. 1924, ch. 100.) If doubt as to the legislative intent had existed before, that amendment makes clear that in a discovery proceeding the Surrogate's Court has now jurisdiction to dispose of every claim to property which should be delivered to an executor, administrator or guardian."

Enter decree directing the transfer of the securities stipulated as held by the respondent to the petitioner within ten days.