In the Matter of the Estate of M. ALICE CUDDEBACK, Deceased.

Surrogate's Court, Orange County, August 31, 1938.

*Reuben Chase,* for Samuel A. Koback and Richard Shaw, as executors, etc.

. *Sydney A. Syme,* for Alice M. Shedd, objectant.

*Watts, Oakes & Bright* [*John Bright* of counsel], for the Middletown Young Men's Christian Association, objectant.

TAYLOR, S. The objections relate to the failure of the executors to sell or dispose of six groups of stock, thereby causing the estate to sustain a substantial loss. The stocks in question are those of National Dairy Products Company, General Electric Company, The Borden Company, Consolidated Gas Company of New York, Pennsylvania Railroad Company and Public Service Corporation of New Jersey.

It appears that the testatrix died April 15, 1937, and by reason of the filing of objections to probate, various preliminary proceedings looking to the trial of the action and negotiations for a settlement, the will was not admitted to probate and letters issued until July 20, 1937.

The objectants merely offered in evidence graphs showing the stock market prices of these securities over a period of time. These graphs show that from April 15, 1937, the date of the testatrix's death, there was a steady and substantial decline which reached its lowest point about the end of June, 1937, and from then forward there was a pronounced advance so that when letters were issued to these executors all of the stock had recovered practically the greater part of the loss sustained since the death of the testatrix. Commencing about August first there was a downward market movement and it appears now that these stocks were sold between March 25 and April 2, 1938, at substantially their lowest prices.

The executors moved to dismiss the objections for want of proof and decision thereon was reserved. No proof was offered by the executors.

From these facts alone the objectants contend there has been proved a *prima facie* case, in that the fact of loss necessarily under ordinary circumstances implies want of care. The objectants say that the executors knew, or ought to have known, that these groups

of stock were non-legals and highly speculative investments, and that they also knew, or should have known, that these stocks had been constantly and steadily declining in price from July, 1937, when the executors qualified. With respect to the first argument the objectants are assuming a fact not in evidence, viz., that these stocks were highly speculative investments. Although the court should hesitate to take judicial notice of the speculative or non-speculative character of specified corporate stocks, and for the purpose of this opinion no such notice is taken, it may be said, however, parenthetically, that to the surrogate some, at least, of these securities appear to be of well-seasoned corporations.

It is axiomatic that an executor is not an insurer nor guarantor (*Matter of Lathers*, 137 Misc. 226, 234), and that the law goes no further than to place upon him the duty to use that degree of prudence and vigilance which would in general be exercised by a reasonably prudent man in the conduct of his own affairs. (3 Bogert on Trusts, § 612; *Matter of Clark*, 257 N. Y. 132; *Brown* v. *Cleveland Trust Co.*, 233 id. 399; *Costello* v. *Costello*, 209 id. 252; *King* v. *Talbot*, 40 id. 76; *Litchfield* v. *White*, 7 id. 438; *Matter of Roche*, 233 App. Div. 236; modfd., 259 N. Y. 458; *Matter of Hurlbut*, 210 App. Div. 456; *Higgins* v. *Whitson*, 20 Barb. 141; *Matter of Parsons*, 143 Misc. 368; modfd., 238 App. Div. 883; *Matter of Kruger*, 141 Misc. 475; *Matter of Pulitzer*, 139 id. 575; affd., 237 App. Div. 808; *Matter of Lathers*, 137 Misc. 226; *Matter of Wilmerding*, 135 id. 674; *Matter of Knower*, 121 id. 208; *Matter of Bishop*, 89 id. 355; *Matter of VomSaal*, 82 id. 531; *Matter of Raplee*, 160 id. 615; *Matter of Winburn*, 140 id. 18; *Matter of Watson*, 168 id. 135; *Matter of Lazar*, 139 id. 261; *Chemical Bank & Trust Co.* v. *Reynaud*, 150 id. 821, 823; affd., 241 App. Div. 813; 266 N. Y. 484.)

In determining whether the acts of a fiduciary have been prudent within the meaning of the rule we must " look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place " (*Purdy* v. *Lynch*, 145 N. Y. 462, 475), and we must remember " a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by." (*Costello* v. *Costello*, 209 N. Y. 252, 262.)

In the decision of cases in these times of economic stress, courts should be lenient toward fiduciaries holding securities against a falling market. (*Matter of Clark*, 257 N. Y. 132; *Matter of Weston*, 91 id. 502; *Matter of United States Trust Co.*, 189 App. Div. 75; *Matter of Varet*, 181 id. 446; affd., 224 N. Y. 573; *Matter of Winburn*, 140 Misc. 18; *Matter of Watson*, 145 id. 425; *Matter of Beadleston*,

146 id. 548; *Matter of Thompson*, 41 id. 420; affd., 87 App. Div. 609; 178 N. Y. 554.)

There is a recognized difference between negligence and errors of judgment, and while the former is properly the basis of surcharge, the latter is not. (*Matter of Clark*, 257 N. Y. 132; *Crabb* v. *Young*, 92 id. 56.)

While unquestionably whether a fiduciary should promptly sell securities, or hold them for a better market, or some other reason, depends upon the facts of the particular case (*Matter of Weston*, 91 N. Y. 502, 510; *Matter of Frame*, 245 App. Div. 675, 685; *Matter of Lazar*, 139 Misc. 261, 262; *Matter of Winburn*, 140 id. 18, 22; *Matter of Morris*, 153 id. 905, 908), an analysis of the cases leads to the conclusion that with respect to the time element solely executors may not be criticised for waiting from twelve to eighteen months to dispose of estate securities. (*Matter of Frame*, 245 App. Div. 675, 685; *Matter of Watson*, 145 Misc. 425; *Matter of Winburn*, 140 id. 18; *Matter of Weston*, 91 N. Y. 502, 510, 511.)

We must keep in mind, too, the distinction between those securities which come to an executor as part of the estate and the investment of estate funds by the fiduciary. (*Matter of Clark*, 257 N. Y. 132, 136, 137; *Matter of Weston*, 91 id. 502, 508; *Matter of Beadleston*, 146 Misc. 548, 550.)

The rule contended for by the objectants would require fiduciaries to accurately foretell stock market fluctuations at their peril. Rather, the fiduciary's duty to sell or to hold securities should be determined by the history of the companies during a period of years, their dividend records and analysis of their capital structure, competency of management, the number of years of the company's existence and the nature and future of the particular business, for " the ups and downs of the Wall Street daily market quotations are not the mercury that must be strictly followed to decide whether it is wise to keep or sell stocks of the character of those in the instant case. Executors and trustees cannot be watchers of the tape, nor gamblers in stocks. They hold securities under the terms of wills or trust instruments. Various stocks at times advance in the face of irregular and ever-declining markets by the activity of pools. The ticker tape does not always reflect the character of the seasoned corporation. The stock market waits on business revival. The prices of stocks are bound to many movements and go up and down in response to conditions." (*Matter of Winburn*, 140 Misc. 18, 22.)

If stock market prices are to be the guide of a fiduciary's care and prudence in the handling of estate securities, then a justified investment one day might be unjustified and the fiduciary deemed

careless and negligent if the stock went down in price at the opening of the exchange the next morning. Fiduciaries are not superhuman.

No question is raised with respect to the burden of proof which is on objectants (*Matter of Winburn*, 140 Misc. 18, 23; *Matter of Turner*, 156 id. 68, 71; affd., 246 App. Div. 741), it being contended, however, that the shrinkage in value, as respresented by stock exchange prices, makes a *prima facie* case.

The securities in question were sold in approximately eight months and within the period in which executors and administrators may liquidate without being criticised with respect to the time element alone. Proof only of the loss or shrinkage in value as represented by stock exchange prices and without any proof of want of care or prudence, the sales having taken place within a year of the executors' appointment, does not establish negligence and does not present a *prima facie* case. (*Matter of Watson*, 168 Misc. 135; *Matter of Menzie*, 54 id. 188; *Matter of Raplee*, 160 id. 615; *Matter of Sprong*, 144 id. 293, 296; *Matter of Pratt*, 143 id. 751, 753, 754; *Matter of Booth*, 147 id. 353; *Matter of Beadleston*, 146 id. 548, 550; *McCabe* v. *Fowler*, 84 N. Y. 314; *Matter of Weston*, 91 id. 502.)

Every case cited in the objectants' brief has been carefully examined. They are all distinguishable from the instant case in that the fiduciary by reason of overstaying his time in the market was required to justify his so doing, or the wills or trust instruments placed duties upon the fiduciaries of promptly disposing of the securities intrusted to their care.

The objections so far as they relate to the sale of securities are dismissed.

It seems that this decedent was executrix of the will of Charles H. Cuddeback which was probated in Bronx county. The administration of that estate was incomplete at the time of this decedent's death and it was carried to completion by the executors of the M. Alice Cuddeback estate. In connection with the final accounting in the Charles H. Cuddeback estate counsel was allowed a fee of $5,000. Instead of receiving payment directly from the funds of the Charles H. Cuddeback estate, the remaining assets of that estate were turned in to the estate of M. Alice Cuddeback and the latter made this payment to counsel. Of course, if M. Alice Cuddeback were the sole residuary legatee under the will of Charles H. Cuddeback and the securities which were turned over to her estate had been sold for an amount in excess of the counsel fee, then, though the proceeding might be somewhat irregular, there would nevertheless be no loss to this estate. The surrogate does not

have before him a copy of the Charles H. Cuddeback will, nor is he able to determine with absolute certainty the disposition by the executors of the M. Alice Cuddeback estate of the property received by it from the other estate. The executors herein are directed to file a supplemental account showing the property received from the Charles H. Cuddeback estate and its disposition, to which account should be attached a copy of the Charles H. Cuddeback will. This account should be served upon counsel for the objectants who may have five days thereafter in which to file objections thereto if they desire to do so. Decision upon this feature of the case will be reserved until the coming in of the supplemental account and the objections, if any.