NICK CAIVANO, Plaintiff, *v.* LEO BRILL, Defendant.*

Municipal Court of New York, Second District, Borough of Bronx,
March 23, 1939.

*James Princiotta*, for the plaintiff.

*Hyman Grill,* for the defendant.

MCGRATH, J.· This is an action for money had and received alleged to have been paid under duress by the plaintiff to the defendant. The Brill Contracting Corporation, of which the defendant was an officer, was installing the plumbing in certain buildings as a subcontractor to the Wheeler Engineering Co., Inc., the general contractor. The plaintiff, a plumber, sought employment from the Brill Contracting Corporation. On October 10, 1937, the defendant, as vice-president of the corporation, hired the plaintiff at an agreed wage of sixty-one dollars and twenty-five cents per week. The employment, however, was conditioned on the payment of twenty-five dollars each week by the plaintiff to his employer. These payments, constituting a " kick-back " from the wages received by the plaintiff, were forwarded to the defendant by an intermediary and by him to the corporate employer. This situation continued until the plaintiff's employment ended on February 21, 1938. The plaintiff now seeks to recover the sum total of these payments.

It is established beyond cavil that money paid under duress may be recovered by the payor. A corollary principle is that a voluntary payment cannot be recovered. Were these payments, then, voluntary, or were they made under such conditions as to

---

* Revd., Sup. Ct., App. Term, 1st Dept., N. Y. L. J. July 8, p. 58.

constitute payments under duress? To put it another way, the question is whether the choice made by this plaintiff between unemployment and employment under the conditions imposed was a free choice.

An action for money had and received will lie where one has obtained money from another through extortion, coercion or by other means of oppression. However, financial stress of itself does not constitute coercion or duress. (*Criterion Holding Co., Inc.*, v. *Cerussi*, 140 Misc. 855.)

The court may take judicial notice of general business conditions; that this country is now in an economic depression (*Germania Life Ins. Co.* v. *Potter*, 124 App. Div. 814; *Matter of Winburn*, 140 Misc. 18; *Campbell Construction Co., Inc.*, v. *Garai*, Id. 603; *Matter of McCafferty*, 147 id. 179), and that employment is scarce and difficult to obtain. (*Blek* v. *Wilson*, 262 N. Y. 253; *New York Steam Corp.* v. *City of New York*, 268 id. 137; *Matter of Budowski* v. *Atlas Steel Casting Co.*, 237 App. Div. 667.)

The Legislature of this State has recognized the fact that employer and employee do not meet on an equal footing; that the employer in his superior position ofttimes conditions the terms of employment to his own best advantage. Realizing that fact, the Legislature has found that certain conditions so imposed by the employer are detrimental to the welfare of both the State and the individual employee. Thus, for example, hours of employment (Labor Law, art. 5), manner and time of payment of wages (Id. art. 6), and minimum wage standards for women and minors (Id. art. 19) are being regulated. The minimum wage standard law for women and minors was enacted on the authority of *West Coast Hotel Co.* v. *Parrish* (300 U. S. 379), which held a similar Washington statute to be constitutional. In the New York statute (Labor Law, § 551) the Legislature declared the public policy of the State to be " that women and minors employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health."

That statute, passed in April of 1937, was followed a month later by the New York State Labor Relations Act (Labor Law, art. 20). Again the Legislature stated the public policy of the State: " Under prevailing economic conditions individual employees do not possess * * * *actual liberty of contract.*" (Labor Law, § 700.) (Italics mine.)

Thus there is a clear recognition of the fact that employer and employee do not meet as equals; that the superior position of the employer dominates the making of contracts between them. (See *Chicago, B. & Q. R. R. Co.* v. *McGuire*, 219 U. S. 549; *McLean* v.

*Arkansas,* 211 id. 539; *Holden* v. *Hardy,* 169 id. 366.) The employer, by virtue of his superior position, is thus enabled to *force* upon the employee terms and conditions of employment which he would undoubtedly refuse were he in a position to do so. This inequality of footing and the power of the employer was forcefully brought out in *Holden* v. *Hardy* (169 U. S. 366), where, in upholding the constitutionality of a statute regulating the employer-employee relationship, the Supreme Court said (169 U. S. at p. 397): " The Legislature has also recognized the fact, which the experience of legislators in many States has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employees, while the latter are often induced by fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, *the proprietors lay down the rules and the laborers are practically constrained to obey them.*" (Italics mine.)

Again, in *West Coast Hotel Co.* v. *Parrish* (300 U. S. 379), which declared the Washington Minimum Wage Law for Women and Minors to be constitutional, Mr. Chief Justice HUGHES cited with approval and reaffirmed the language from the *Holden* case and stated, with regard to the class of workers under consideration, that they " are in an unequal position with respect to bargaining power and are thus relatively helpless against the denial of a living wage." (300 U. S. at p. 399.)

In *National Labor Relations Bd.* v. *Jones & Laughlin S. Corp.* (301 U. S. 1) the Supreme Court, in sustaining the validity of the National Labor Relations Act, reaffirmed the right of employees to self-organization (See *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184), upon the practical realization that this right of self-organization is necessary to in some way counteract the almost dictatorial power of the employer to condition the terms of employment without regard to the interest of the employees. Mr. Chief Justice HUGHES, speaking for the majority, there said (301 U. S. at p. 33), " that a single employee was helpless in dealing with an employer; that he was dependent ordinarily on his daily wage for the maintenance of himself and family; that if the employer refused to pay him the wages that he thought fair, he was nevertheless unable to leave the employment and resist arbitrary and unfair treatment. "

The Legislature of this State under the so-called McNaboe Law, section 962 of the Penal Law, has made it unlawful for any person

to request, demand or receive, either before or after such workman is engaged, the return of any part of the workman's wages.

It is immaterial in the instant case that the "kick-back" condition was imposed before the employment commenced. Once the plaintiff had commenced his work he was under the continued threat of discharge if he failed to comply with the "kick-back" requirement. Once having obtained employment he was faced with the practical necessity of staying employed, whatever, the cost. In seeking this work with the corporation the plaintiff had been faced with the necessity of obtaining employment. Both at the time of seeking employment and afterwards, while in the course of the employment, the forces already discussed were exerting their pressure upon this plaintiff. It was just as necessary for him to obtain employment as it was for him to retain the employment once obtained, as it was for the employees in the *West Coast Hotel Co.*, *Holden* and *Jones & Laughlin S. Co.* cases to retain their employment.

Clearly the "kick-back" agreement was consented to by this plaintiff under the pressure of a general economic depression, scarcity of employment and the other factors which combine to create the unequal position between employer and employee. In *United States* v. *Butler* (297 U. S. 1) the Supreme Court declared unconstitutional the Agricultural Adjustment Act of 1933, concluding that Congress had thereby evaded the rights of the States to legislate upon local matters. In answer to the contention that compliance with the A. A. A. was a matter of voluntary co-operation on the part of the farmers, Mr. Justice ROBERTS, speaking for the majority, said (297 U. S. at p. 70): " The regulation is not in fact voluntary. The farmer, of course, may refuse to comply, but the price of such refusal is the loss of benefits. The amount offered is intended to be sufficient to exert pressure on him to agree to the proposed regulation. *The power to confer or withhold unlimited benefits is the power to coerce or destroy.* \* \* \* *This is coercion by economic pressure. The asserted power of choice is illusory.*" (Italics mine.)

The " kick-back " is not in fact voluntary. The employee, of course, may refuse to comply, but the price of such refusal is lack of employment and economic distress. General economic conditions, the scarcity of employment and the necessity of obtaining employment constitute pressure compelling him to agree to the proposed "kick-back." The power to confer or withhold employment is the power to coerce. " *This is coercion by economic pressure The asserted power of choice is illusory.*"

We are no longer bound by such unenlightened and archaic concepts of labor relations that we would say that the employer and employee meet as two equals, competent and free to reach their agreement; that either may refuse to give his consent if the terms are not to his liking; and that if a bargain is made, however inequitable it may be and however oppressed one party may be, short of actual physical compulsion, the parties are bound thereby. We realize today that employer and employee are not equals; that under present day economic conditions the employee may be forced to accept terms which he would not accept under normal economic conditions; that the fear of economic distress is a compelling force which, when combined with the superior position of the employer, destroys the free agency of the employee. Payments made under a "kick-back" condition in a contract of employment, under economic conditions such as exist today, are clearly involuntary payments made under duress and are recoverable.

Judgment for the plaintiff in the sum of $446.02.